1  Joseph W. Cotchett (36324; jcotchett@cpmlegal.com)
   Steven N. Williams (175489; swilliams@cpmelgal.com)
2  Nancy L. Fineman (124970); nfineman@cpmlegal.com)
   Douglas Y. Park (233398; dpark@cpmlegal.com)
3  Matthew K. Edling (250940; medling@cpmlegal.com)
   **COTCHETT, PITRE & McCARTHY**
4  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
6
   *Counsel for Plaintiff and the Class*
7

8

9                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
10

11  NUTS FOR CANDY, A Sole Proprietorship,      )  Case No.    2873
    individually and on behalf of all others similarly  )
12  situated,                                   )
                                                )  **CLASS ACTION COMPLAINT**
13          Plaintiff,                          )
                                                )  **COMPLAINT FOR VIOLATIONS**
14  vs.                                         )  **OF SECTION 1 OF THE SHERMAN**
                                                )  **ACT (15 U.S.C. § 1)**
15  GANZ, INC., a Canadian Company, and         )
    GANZ U.S.A. LLC,                            )
16                                              )  **JURY TRIAL DEMANDED**
            Defendants.                         )
17  _____)

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

_____
CLASS ACTION COMPLAINT



# TABLE OF CONTENTS

**Page**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       C.    Agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CLASS ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TRADE AND COMMERCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

GANZ USED ITS DOMINANT POSITION IN THE MARKET FOR TOYS COMBINED
WITH ONLINE GAMING TO FORCE THE ILLEGAL TYING ARRANGEMENT UPON
RETAILERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.    Consistent With The Reasonable Interchangeability Standard,
            The Relevant Product Market Is Toys Combined With Online Gaming . . . . . . . 6

       B.    Webkinz Possesses A Dominant Share Of The Relevant Product Market . . . . . 8

DEFENDANT'S WRONGFUL CONDUCT AND ANTITRUST VIOLATIONS . . . . . . . . . . 9

PLAINTIFF AND CLASS MEMBERS SUFFERED ANTITRUST INJURY
BECAUSE OF DEFENDANTS' CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VIOLATIONS ALLEGED
       (Violation of Sherman Act § 1 and Clayton Act § 3) . . . . . . . . . . . . . . . . . . . . . . . . . 10

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

JURY TRIAL DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## INTRODUCTION

1.     Plaintiff, NUTS FOR CANDY, a sole proprietorship (collectively referred to herein as "NFC" or "Plaintiff") on behalf of all others similarly situated, brings this action for treble damages and injunctive relief under the Sherman Antitrust Act and the Clayton Antitrust Act against Defendants GANZ, INC. and GANZ U.S.A., LLC (collectively referred to herein as "Ganz"). Plaintiff complains and alleges on information and belief except to those paragraphs applicable to the named Plaintiff, which are based on personal knowledge, as follows:

## NATURE OF THE ACTION

2.     This action arises from the illegal acts of the Defendants in conditioning the sale of the Webkinz toy (the "tying" product") to retailers on a minimum purchase of $1,000 of products from Ganz's "core line" (the "tied Ganz products"). The core line consists of Ganz products unrelated to Webkinz, including lip gloss, magnets, and stuffed and rubber animals.

3.     Webkinz is a toy and an online game at the same time. Webkinz is a highly popular line of plush stuffed animals. Each Webkinz costs between $10 and $15 and comes with a code that allows the user to unlock a Web site that offers online games and other activities (www.webkinz.com). The main attraction of the Webkinz Web site is the games. Once on the Webkinz site, the user takes care of a virtual pet by earning points from playing games. The user cashes in their points to buy food, houses, and other items for their virtual pet.

4.     Ganz sells Webkinz primarily through small retailers and gift shops. If the retailer does not have an account with Ganz, it must first order a minimum of $1,000 from Ganz's "core line" before it can become eligible to order Webkinz. After placing the minimum order for the tied Ganz products, the retailer can then submit an application to Ganz to order Webkinz. Ganz does not guarantee approval of the retailer's application. Through this co-ordering requirement, the ability to purchase of Webkinz is conditioned on first purchasing at least $1,000 of the tied Ganz products. Ganz does not permit the retailer to return any of the tied Ganz products that it does not sell.

5.     In addition to this co-ordering requirement, Ganz has a Loyalty Program for Webkinz retailers that gives priority shipping for ordering more than specified levels of core

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

1  products (non-Webkinz products) within a twelve month period. Also, the greater the dollar

2  value of core products ordered, the greater the maximum number of pieces the retailer can order

3  of each Webkinz style.

4        6.      Ganz possesses sufficient power in the relevant product market to force Plaintiff

5  and members of the Class into this tying arrangement. Ganz also possesses sufficient power in

6  the relevant product market to appreciably restrain competition in the market where the tied Ganz

7  products compete.

8        7.      Defendants' actions have caused monetary injury to Plaintiff and members of the

9  Class by forcing them to order the tied Ganz products before being qualified to order Webkinz.

10  Defendants' actions have also allowed them to reap wrongful profits.

11       8.      Plaintiff brings this action on behalf of all persons and entities in the United States

12  who established an account with Ganz during the period from July 1, 2006 through the present

13  (the "Class Period") and who ordered Webkinz from Ganz on the condition that they also order

14  products from Ganz's "core line" of products.

15                          **JURISDICTION AND VENUE**

16       9.      Plaintiff brings this action to obtain injunctive relief and to recover treble damages

17  and the costs of this suit, including reasonable attorneys' fees, against Defendants for the injuries

18  sustained by Plaintiff and the members of the Class as a result of violations of Section 1 of the

19  Sherman Act, 15 U.S.C. § 1.

20       10.     This Court has jurisdiction over the subject matter of this dispute under the

21  provisions of Sections 1331, 1337 and 2201 of Title 28 of the United States Code, and Sections 4

22  and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

23       11.     This Court has jurisdiction over this dispute pursuant to the Class Action Fairness

24  Act, 28 U.S.C. § 1332(d), in that Plaintiff and Defendant are citizens of different states and the

25  matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and the suit is

26  brought as a class action.

27

28

✪
LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

CLASS ACTION COMPLAINT

2

12. This Court has jurisdiction over each of the Defendants by virtue of their nationwide contacts and business activities, including their extensive contacts and business activities in this district.

13. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c), and (d) because during the Class Period, the Defendants resided, transacted business, were found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. Defendants transact a substantial amount of business in the Northern District of California, including the sale of Webkinz and the tied Ganz products.

## PARTIES

### A. Plaintiff

14. Plaintiff **NUTS FOR CANDY** is a sole proprietorship with its principal place of business in Burlingame, California. Plaintiff sells chocolates and candy, toys, gifts, and ice cream. During the Class Period, Ganz forced Plaintiff to order a minimum of $1,000 of Ganz products and collectibles unrelated to Webkinz from its "core line" before he could become eligible to purchase Webkinz for sale in his store. On April 23, 2008, Plaintiff ordered $1,035 of the tied Ganz products to become eligible to order Webkinz and submitted a Webkinz application form. The next day, Ganz approved Plaintiff's Webkinz application. On April 25, 2008, Plaintiff placed an order for $6,411 worth of Webkinz. As a result of Ganz's antitrust violations alleged herein, Plaintiff has suffered pecuniary injury and damages.

### B. Defendants

15. Defendant GANZ, INC. is a private company duly organized and existing under the laws of Canada with its principal place of business in Woodbridge, Ontario, Canada. Ganz, Inc. is responsible for formulating and overseeing the marketing, distribution, and sales policies of Ganz products. Founded in 1950, Ganz is in the business of creating and selling toys.

16. Defendant GANZ U.S.A., LLC is a limited liability company duly organized and existing under the laws of New York with its principal place of business in Cheektowaga, New York. Ganz U.S.A., LLC is a wholly-owned business unit of Ganz, Inc.

17.     Ganz transacts business in the Northern District of California.  The company's Area Sales Representatives and Northern California Regional Manager also visit stores throughout the district to sell Webkinz and the tied Ganz products.

**C.     Agency**

18.     At all times relevant to this complaint, Defendants, and each of them, were acting as the agents or joint venturers of each other, and were acting within the course and scope of their agency with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this complaint.

## CLASS ALLEGATIONS

19.     Plaintiff brings this action on its own behalf and as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities in the United States who established an account with Ganz during the period from July 1, 2006 through the present and ordered Webkinz from Defendant on the condition that they also order products from Ganz's "core line" of products.

20.     Because such information is in the exclusive control of Defendants, Plaintiff does not know the exact number of Class members.  However, Plaintiff believes that Class members number at least in the hundreds and are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

21.     There are questions of law and fact common to the Class.  They include:

(a)     The definition of the relevant product market for Webkinz;

(b)     Whether Ganz implemented an unlawful and illegal tying arrangement that conditioned retailers' ability to purchase Webkinz on their purchase of a specified, minimum dollar amount of the tied Ganz products in the United States in violation of Section 1 of the Sherman Act;

(c)     Whether plaintiff and the other members of the Class were injured by reason of Ganz's unlawful conduct; and

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

**CLASS ACTION COMPLAINT**

4

1          (d)     The appropriate measure of damages sustained by Plaintiff and other Class

2          members.

3      22.    Plaintiff's claims are typical of the claims of the Class members.  Plaintiff will

4  fairly and adequately protect the interests of the Class.  Plaintiff purchased Webkinz from the

5  Defendants on the condition that it also purchase a specified, minimum dollar amount of the tied

6  Ganz products, and Plaintiff's interests are coincident with and not antagonistic to those of other

7  members of the Class.

8      23.    The questions of law and fact common to the members of the Class predominate

9  over any questions affecting only individual members.

10      24.    A class action is superior to other methods for the fair and efficient adjudication

11  of this controversy.  Treatment as a class action will permit a large number of similarly situated

12  persons to adjudicate their common claims in a single forum simultaneously, efficiently, and

13  without the duplication of effort and expense that numerous individual actions would engender.

14      25.    Class treatment will also permit the adjudication of relatively small claims by

15  many Class members who otherwise could not afford to litigate an antitrust claim such as is

16  asserted in this complaint.  This class action presents no difficulties in management that would

17  preclude maintenance as a class action.  Finally, the Class is readily definable and is one for

18  which records of the names and addresses of the members of the Class exist in the files of

19  Defendants.

20      26.    Plaintiff and the Class have retained counsel experienced in complex class action

21  litigation.  Counsel for the Class will vigorously assert the claims of the Class members.

22  **TRADE AND COMMERCE**

23      27.    During the entire Class Period, Defendants sold Webkinz and the tied Ganz

24  products in the United States in interstate commerce, and the violations of law asserted herein

25  have occurred in interstate commerce.

26      28.    Defendant's unlawful conduct described herein affected a substantial amount of

27  United States interstate commerce in both the relevant market and the market in which the tied

28  Ganz products compete.


LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

CLASS ACTION COMPLAINT

**GANZ USED ITS DOMINANT POSITION IN THE MARKET FOR TOYS COMBINED WITH ONLINE GAMING TO FORCE THE ILLEGAL TYING ARRANGEMENT UPON RETAILERS**

A.   **Consistent With The Reasonable Interchangeability Standard, The Relevant Product Market Is Toys Combined With Online Gaming**

29.   The Supreme Court, in *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962), held that "the 'outer boundaries' of a product market are determined by the **reasonable interchangeability of use** or the cross-elasticity of demand between the product itself and substitutes for it."

30.   Applying this standard to the Webkinz product line, two characteristics define products within the relevant market.  First, the consumer purchases a toy.  Second, the toy contains a secret code or password that allows the purchaser to access online games and other activities.  Purchase of the toy is required for online access.  Examples include Littlest Pet Shop VIPs (www.hasbro.com/littlestpetshop) and Shining Stars (www.shiningstars.com).

31.   From these product characteristics, three definitions of the relevant product market in the United States are most plausible: (1) plush lines combined with online gaming; (2) toys combined with online gaming; and (3) virtual worlds that can be enjoyed without the initial purchase of a physical item.  The second definition – toys combined with online gaming – is the most appropriate definition for the relevant product market.

32.   While the two first definitions are similar, the second is broader in scope.  Yet, there is no principled reason to restrict the product market to plushes combined with online gaming, as opposed to toys combined with online gaming.  Examples of non-plush toys combined with online gaming that possess the two defining characteristics of products within the relevant market include: (1) Mattel's U.B. Funkeys features various vinyl characters that the purchaser uses to unlock different online gaming zones and social networking (www.ubfunkeys.com), and (2) the Be-Bratz doll (not a plush) and necklace allow the purchaser to log on to the toy's Web site (www.be-bratz.com), which offers games and social networking.

33.   These products – toys combined with online gaming – possess the same two essential characteristics as plushes combined with online gaming.  Excluding the non-plush toys

1  combined with online gaming from the market does not square with the reasonable

2  interchangeability standard.  The second market definition is therefore preferable.

3      34.    Defining the relevant market product as virtual worlds, including those that do not

4  include a toy accessory, results in an overbroad market definition.  Virtual worlds have been

5  defined as "Sites and applications that provide users with an online environment for interaction

6  and socialization, typically through customizable avatars.  Virtual worlds may include games but

7  are not games themselves.  Often, virtual worlds have economies and their own currency."

8  (eMarketer, *Kids and Teens Online: Virtual Worlds Open New Universe*, September 2007, pg. 3).

9      35.    The virtual worlds market includes not only toys combined with online gaming,

10  but also online ventures such as Club Penguin owned by Disney (www.clubpenguin.com),

11  Stardoll (www.stardoll.com), and Neopets (www.neopets.com) that do not require the purchase

12  of a toy or any other item (e.g., trading cards) to gain online access.  These latter sites often offer

13  monthly membership fees and/or premium memberships and fees to gain access to special

14  features.

15      36.    Virtual worlds that do not require the purchase of a toy or other item for online

16  access are not reasonably interchangeable with toys combined with online gaming.

17  Conceptualizing the relevant product market as the former yields an overinclusive set of products

18  that are not reasonably interchangeable in terms of function.  The critical distinction between the

19  two product markets is the physical aspect of the toy that allows the user to enjoy the product

20  independent of doing anything online.  One can sleep and play with a Webkinz or Shining Star,

21  but it is impossible to enjoy Club Penguin without going to the website.  Anita Frazier, analyst

22  with the market research company NPD Group, explains the importance of the physical and

23  online combination: "We've found that most kids are actively playing <u>both</u> the online version …

24  and with the physical toy."

25      37.    Defining the market as toys combined with online gaming produces a set of

26  products that are reasonably interchangeable, while defining the market as virtual worlds does

27  not.  Because there are non-plush toys that are reasonably interchangeable with Webkinz, the

28

1  most appropriate definition of the relevant product market is the following: the United States

2  market for toys combined with online gaming.

3    **B.    Webkinz Possesses A Dominant Share Of The Relevant Product Market**

4        38.    The available evidence suggests that Webkinz enjoys a dominant position in the

5  United States for toys combined with online gaming. First, Webkinz enjoys great popularity.

6  Introduced in 2005, Webkinz was an early entrant into the market. In 2007, girls six to eleven

7  rated Webkinz as the "coolest" toy brand, while boys of the same age rated Webkinz as the third

8  coolest toy brand. With girls, Webkinz ranked above Bratz, Barbie, and Littlest Pet Shop. Girls

9  ranked Webkinz as their favorite brand, beating out heavyweights such as High School Musical,

10  Hannah Montana, and Abercrombie & Fitch. (Playthings, *Toys Still Tops With Kids – Barely;*

11  *Kids share coolest brands heading into the holidays,* January 1, 2008, pg. 2).

12        39.    Second, although Ganz does not regularly release sales figures, Webkinz sales

13  have been high. Anitz Frazier of NPD Group estimates that Webkinz U.S. revenues were about

14  $45 million in 2006. That's before Webkinz's popularity boomed in early 2007. Ganz claimed

15  that as of May 2007, more than 2 million Webkinz had been sold. One analyst estimates that

16  Webkinz's sales exceeded $100 million by late 2007. At Limited Too, a popular mall store with

17  girls, 11% of transactions in the fourth quarter of 2007 involved a Webkinz product. Over 21%

18  of retailers surveyed told Toy Directory Monthly that Webkinz was their best selling item in

19  2007.

20        40.    Third, the Webkinz site is one of the most visited web sites aimed at children and

21  teens. Even within the broader market of virtual worlds, in July 2007 the Webkinz site had over

22  5 million unique U.S. visitors – more than any other virtual world. Also as of July 2007,

23  Webkinz had the most unique visitors among U.S. children ages 2 to 11 of any web site. From

24  January to July 2007, the number of unique visitors to Webkinz increased by 175%. In March

25  2008, Webkinz attracted nearly 12 million unique visitors. In fact, other than the Apple iPhone,

26  Webkinz was the fastest rising search term in the United States.

27        41.    The web site visitor data strongly suggests Webkinz's share of unique visitors to

28  online gaming sites combined with a toy is approximately 80%. Visitors to the Webkinz site

1    spend an average of 12 minutes per visit, indicating that the vast majority of visitors are not

2    merely curious visitors, but members.

3    ## DEFENDANT'S WRONGFUL CONDUCT AND ANTITRUST VIOLATIONS

4         42.    Beginning by at least July 1, 2006, Ganz instituted a policy whereby persons and

5    entities who did not have an account with Ganz and wanted to order Webkinz had to purchase at

6    least $1,000 of the tied Ganz products. Ganz enforced this policy on a nationwide basis.

7         43.    In addition to the co-ordering requirement, Ganz has a Loyalty Program for

8    Webkinz retailers that gives priority shipping for ordering more than specified levels of core

9    products within a twelve month period. Also, the greater the dollar value of core products

10   ordered, the greater the maximum number of pieces the retailer can order of each Webkinz style.

11        44.    During the Class Period, Ganz did not force Class members to sell the tied Ganz

12   products and Webkinz as a package to consumers. Yet, Ganz forced Class members to order the

13   tied Ganz products if they wanted to sell Webkinz, even if they did not want to order the tied

14   Ganz products.

15        45.    Ganz's anticompetitive conduct is objectively baseless and subjectively motivated

16   by a desire to restrict competition in the relevant market. The adoption and enforcement of the

17   tying arrangement has had the effect of restricting competition in the relevant product market.

18        46.    In order to ensure that they receive genuine Webkinz products, Plaintiff and Class

19   members must order Webkinz direct from Ganz.

20        47.    Ganz adopted and implemented these policies and practices to preserve and

21   extend its dominant position in the relevant market. Through these policies and practices, Ganz

22   succeeded in making it more difficult for Plaintiff and Class members to sell products that

23   compete with Webkinz and/or the tied Ganz products by forcing Plaintiff to stock limited retail

24   shelf space with unwanted products, reducing Plaintiff's ability to sell competing products.

25   Ganz's unlawful conduct has had the effect of reducing the level of competition in the relevant

26   market and in the market for the tied Ganz products that would have otherwise prevailed. At the

27   same time, Ganz's conduct has allowed it to maintain and increase its market share in those

28   markets.

48.    Ganz used its dominant position in the relevant product market to force Plaintiff and Class members to purchase the tied Ganz products. As Ganz's power in the relevant market for Webkinz increased, it began conditioning the sales of Webkinz on the purchase of the tied Ganz products, thereby restraining competition in the market for the tied Ganz products and artificially increasing its revenues and profits from the tied Ganz products.

49.    Ganz claims that the tying arrangement is necessary to protect customers who already have accounts with Ganz. This explanation is pretextual because the tying arrangement does not tangibly benefit Ganz's existing customers. However, Ganz benefits from increased revenues and profits derived from the tied Ganz products. Further, the tying arrangement does not provide any benefit that is defensible under the federal antitrust laws. Thus, there is no legitimate reason for Defendants to require Plaintiff and Class members to order the tied Ganz products to become eligible to sell Webkinz.

## PLAINTIFF AND CLASS MEMBERS SUFFERED ANTITRUST INJURY BECAUSE OF DEFENDANTS' CONDUCT

50.    Through their unlawful acts, Defendants acted to the detriment of Plaintiff and Class members, resulting in Defendants reaping unlawful revenues and profits from the orders of the tied Ganz products.

51.    As a direct and proximate result of Ganz's conduct, Plaintiff and the Class members have been injured in their property and business in an amount to be determined according to proof. Plaintiff and Class members have suffered monetary damages from being coerced into purchasing the tied Ganz products as a condition of purchasing Webkinz. Defendants' practice has forced Plaintiff and Class members to pay for and stock items that take up space that could be used for products that compete against Webkinz and/or the tied Ganz products.

## VIOLATIONS ALLEGED

(Violation of Sherman Act § 1 and Clayton Act § 3)

52.    Plaintiff incorporates by reference all the allegations set forth above as if fully set herein.

53.    Through its co-ordering requirement, Ganz has conditioned the sale of Webkinz (the "tying product") to the order of the tied Ganz products (the "tied product"). Ganz has sold Webkinz to Plaintiff and Class members on the condition that they also order the tied Ganz products.

54.    The tying product – Webkinz – is a separate product from the tied product – the tied Ganz products. Demand for the two products can be separated, and to the extent there is any demand for the tied product, there is sufficient demand for each product separately that it is economically efficient to offer the two products separately.

55.    Ganz has used its economic power in the relevant product market to force Class members to purchase the tied Ganz products in order to sell Webkinz.

56.    Ganz has sufficient economic power in the United States market for toys combined with online gaming to enable it to restrain trade appreciably in the market where the tied Ganz products compete. Ganz's tying arrangement has been successful and affects a substantial volume of commerce. Ganz has been able to force Class members to order the tied Ganz products if they want to order Webkinz. If Ganz had not imposed the tying arrangement, many Class members would not have ordered the tied Ganz products, or would have ordered smaller amounts than Ganz forced them to order.

57.    Ganz has a financial interest in the sale of the tied products so as to increase sales and its share in the market where the tied Ganz products compete.

58.    Ganz's tying arrangement has harmed competition and foreclosed a substantial amount of interstate commerce in the market where the tied Ganz products compete.

59.    Ganz's tying arrangement has caused monetary injury to Class members.

60.    Ganz's tying arrangement involving Webkinz and the tied Ganz products is objectively baseless and subjectively motivated by a desire to restrict competition. This arrangement imposes excessive burdens, and any legitimate business purposes could be accomplished by less restrictive means.

61.    This tying arrangement constitutes a *per se* violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14).

LAW OFFICES
COTCHETT,
PITRE
& MCCARTHY

CLASS ACTION COMPLAINT

11

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for relief as follows:

A.    The Court declare and decree that Defendants' acts, conduct and practices are unlawful under Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14);

B.    The Court permanently enjoin Defendants, as well as its officers, agents, servants, employees and attorneys who shall receive actual notice of the Court's injunction, from continued engagement in those acts, forms of conduct and practices found to be illegal, as provided by Section 16 of the Clayton Act (15 U.S.C. § 26; *see also* 15 U.S.C. § 4);

C.    The Court award Plaintiff and members of the Class threefold their actual antitrust damages sustained as a result of Defendants' antitrust violations, as provided by Section 4 of the Clayton Act (15 U.S.C. § 15);

D.    The Court award Plaintiff and members of the Class reasonable attorneys' fees and costs as provided by Section 4 of the Clayton Act (15 U.S.C. § 15) and the common fund doctrine;

E.    The Court award Plaintiff and members of the Class pre-judgment and post-judgment interest as permitted by law; and

F.    The Court award Plaintiff and members of the Class such other and further relief at law or in equity as the Court may deem just and proper.

DATED: June ___9___, 2008

COTCHETT, PITRE & McCARTHY

By: _____
STEVEN N. WILLIAMS
*Counsel for Plaintiff and the Class*

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY

CLASS ACTION COMPLAINT

12

**JURY TRIAL DEMAND**

Plaintiff, pursuant to Federal Rule of Civil Procedure 38, demands a trial by jury of all issues which are subject to adjudication by a trier of fact.

Dated: June _9_, 2008

**COTCHETT, PITRE & McCARTHY**

By: _____
STEVEN N. WILLIAMS
*Counsel for Plaintiff and the Class*

LAW OFFICES
COTCHETT,
PITRE
& McCARTHY