1  LISA I. CARTEEN, Bar No. 204764
   BAKER & HOSTETLER LLP
2  12100 Wilshire Boulevard, 15th Floor
   Los Angeles, California 90025-7120
3  Telephone:    310.820.8800
   Facsimile:    310.820.8859
4  Email:        lcarteen@bakerlaw.com

5  BRUCE O. BAUMGARTNER, Bar No. 0025701 (*Pro Hac Vice*)
   ROBIN E. HARVEY, Bar No. 0014183 (*Pro Hac Vice*)
6  BAKER & HOSTETLER LLP
   312 Walnut Street, Suite 3200
7  Cincinnati, Ohio 45202-4072
   Telephone:    513.929.3400
8  Facsimile:    513.929.0303
   Email:        bbaumgartner@bakerlaw.com
9                rharvey@bakerlaw.com

10  LEE H. SIMOWITZ, Bar No. 185728 (*Pro Hac Vice*)
    BAKER & HOSTETLER LLP
11  1050 Connecticut Avenue, NW, Suite 1100
    Washington, DC 20036-5304
12  Telephone:    202.861.1500
    Facsimile:    202.861.1783
13  Email:        lsimowitz@bakerlaw.com

14  Attorneys for Defendants
    GANZ, INC. and GANZ U.S.A., LLC

15

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| 19  NUTS FOR CANDY, a Sole Proprietorship, individually and on behalf | Case No.  CV 08-2873 JSW |
| 20  of all others similarly situated, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| 21                    Plaintiff, | |
| 22  v. | Date:      November 7, 2008 |
| | Time:      9:00 a.m. |
| 23  GANZ, INC. and GANZ U.S.A., LLC, | Judge:     Hon. Jeffrey S. White |
| | Ctrm.:     Courtroom 2, 17th Floor |
| 24                    Defendants. | |

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

# TABLE OF CONTENTS

2

**Page**

3    NOTICE OF MOTION AND MOTION..................................................................................i

4    MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

5    I.    INTRODUCTION.......................................................................................................1

6    II.    SUMMARY OF ARGUMENT ..................................................................................1

7    III.    ALLEGATIONS OF THE COMPLAINT.................................................................2

8    IV.    ARGUMENT ..............................................................................................................3

9        A.    An Antitrust Complaint Must Provide A Factual Basis For A Claim ...................3

10        B.    The Complaint Fails To Allege An Anticompetitive Effect In A Market For A Tied Product.......................................................................................................5

11            1.    The Vice Of A Tying Arrangement Lies In Its Effect On The Tied Product Market.........................................................................................5

12

13            2.    To Establish An Unlawful Tying Arrangement, Plaintiff Must Plead And Prove An Effect On Competition In The Tied Product Market .........6

14            3.    The Complaint Does Not And Cannot Allege A Tied Product Market...................................................................................................7

15

16            4.    The Complaint Does Not Allege Any Harm To Competition ....................9

    C.    The Complaint Fails To Allege That Ganz Possesses Market Power In A Relevant Product Market...................................................................................11

17            1.    The Complaint Fails To Allege That Webkinz Has Market Power .........11

18

19            2.    The Complaint Alleges No Entry Barriers, And Admits The Entry Of Major Competitors ...........................................................................13

20            3.    The Complaint's Allegations Of Webkinz's Popularity Are Not A Substitute For The Required Allegations Of Market Position And Entry Barriers ........................................................................................14

21

22    V.    CONCLUSION .........................................................................................................15

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

# TABLE OF AUTHORITIES

**Page(s)**

3

## CASES

4

5

*Bell Atlantic Corp. v. Twombly*,
   127 S.Ct. 1955 (2007) ........................................................................................... 3, 4, 14

6

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) ....................................................................................................... 9

7

8

*Cascade Health Solutions v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) ............................................................................. 6, 11, 15

9

*Catch Curve, Inc. v. Venali, Inc.*,
   519 F. Supp. 2d 1028 (C.D. Cal. 2007) ................................................................. 6, 7, 8

10

11

*Conley v. Gibson*,
   355 U.S. 41 (1957) ........................................................................................................ 4

12

*CTUnify, Inc. v. Nortel Networks, Inc.*,
   115 Fed. Appx. 831 (6th Cir. 2004) .............................................................................. 7

13

14

*Driskill v. Dallas Cowboys Football Club, Inc.*,
   498 F.2d 321 (5th Cir. 1974) ......................................................................................... 7

15

*Elliott v. United Ctr.*,
   126 F.3d 1003 (7th Cir. 1997) ....................................................................................... 8

16

17

*Green Country Food Mkt., Inc. v. Bottling Group, LLC*,
   371 F.3d 1275 (10th Cir. 2004) ..................................................................................... 8

18

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006) .......................................................................................... 4, 5, 11, 15

19

20

*In re eBay Seller Antitrust Litig.*,
   545 F. Supp. 2d 1027 (N.D. Cal. 2008) ......................................................................... 7

21

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) .................................................................................................. 6, 8, 15

22

23

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ....................................................................................... 4

24

*Les Shockley Racing v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir.1989) ........................................................................................ 10

25

26

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ....................................................................................... 14

27

*Paladin Assocs. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ..................................................................................... 13

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

**TABLE OF AUTHORITIES**

**Page(s)**

2

3

*Papasan v. Allain,*
    478 U.S. 265 (1986) ............................................................................................... 3

4

*Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.,*
    754 F.2d 91 (2d Cir. 1985) .................................................................................... 7

5

6

*Reifert v. S. Cent. Wisc. MLS Corp.,*
    450 F.3d 312 (7th Cir. 2006) ............................................................................... 10

7

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC,*
    No. 06-55937, 2008 U.S. App. LEXIS 14761 (9th Cir. July 11, 2008 ......... passim

8

9

*Rutman Wine Co. v. E. & J. Gallo Winery,*
    829 F.2d 729 (9th Cir. 1987) ........................................................................... 4, 10

10

*Sheridan v. Marathon Petroleum Co. LLC,*
    No. 07-3543, 2008 U.S. App. LEXIS 13275 (7th Cir. June 23, 2008) ................ 12

11

12

*Siegel v. Chicken Delight, Inc.,*
    448 F.2d 43 (9th Cir. 1971) ............................................................................... 6, 7

13

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.,*
    875 F.2d 1369 (9th Cir. 1989) ............................................................................... 9

14

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.,*
    959 F.2d 468 (3d Cir. 1992) .................................................................................. 8

15

16

*United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.,*
    89 F.3d 233 (5th Cir. 1996) ................................................................................... 7

17

*United Magazine Co. v. Murdoch Magazines Distrib., Inc.,*
    146 F. Supp. 2d 385 (S.D.N.Y. 2001) ................................................................... 7

18

19

*United States v. Loew's, Inc.,*
    371 U.S. 38 (1962) .............................................................................................. 14

20

*United States v. Syufy Enters.,*
    903 F.2d 659 (9th Cir. 1990) ............................................................................... 14

21

22

*W. Parcel Expr. v. United Parcel Serv. of Am.,*
    190 F.3d 974 (9th Cir. 1999) ............................................................................... 14

23

*Will v. Comprehensive Accounting Corp.,*
    776 F.2d 665 (7th Cir. 1985) ......................................................................... 13, 15

24

25

**STATUTES**

26

Clayton Act, 15 U.S.C. § 14 ....................................................................................... 1, 3

27

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... i, 15

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3    Sherman Act, 15 U.S.C. § 1 ...................................................................................1, 3

4    Sherman Act, 15 U.S.C. § 3 ......................................................................................3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

  **PLEASE TAKE NOTICE** that on November 7, 2008 at 9:00 a.m. or as soon as the

4

matter may be heard before the Honorable Jeffrey S. White of the United States District Court,

5

Northern District of California, San Francisco Division, 450 Golden Gate Avenue, 17th Floor,

6

San Francisco, California 94102, in Courtroom 2, Defendants Ganz, Inc. and Ganz U.S.A., LLC

7

will and hereby do move the Court for an order dismissing Plaintiff's Complaint.

8

  This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on the

9

grounds that Plaintiff has failed to state a claim under the antitrust laws and Plaintiff's Complaint

10

should be dismissed.

11

  This motion is based on this Notice, the attached Memorandum of Points and Authorities,

12

all pleadings and papers on file in this action, and upon such other documentary and oral evidence

13

as may be presented to the Court at the time of the hearing on this Motion.

14

Dated: August 4, 2008      Respectfully submitted,

15

              BAKER & HOSTETLER LLP
              LISA I. CARTEEN

16

17

              /s/ Lisa I. Carteen

18

              Lisa I. Carteen

19

              Attorneys for Defendants
              GANZ, INC. and GANZ U.S.A., LLC

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3          Plaintiff, a sole proprietorship selling chocolates, candy, toys, gifts and ice cream, filed a

4    legally baseless Complaint asserting Defendants imposed on it and other alleged members of a

5    purported class a *per se* unlawful tying arrangement in violation of the Sherman Act, 15 U.S.C.

6    Sec. 1, and the Clayton Act, 15 U.S.C. Sec. 14.  Plaintiff claims that Defendants adopted and

7    implemented a "co-order" policy and Loyalty Program requiring some of Defendants' customers

8    to purchase any of Defendants' other products "unrelated to Webkinz" when they placed initial

9    orders for Defendants' popular Webkinz products.  (Compl. ¶ 2.)  Plaintiff's incurably defective

10   Complaint fails to state a claim under controlling U.S. Supreme Court and Ninth Circuit antitrust

11   decisions.

12

**II.    SUMMARY OF ARGUMENT**

13         Tying arrangements are unlawful only if they reduce competition in the market for the tied

14   product by using market power in the market for the tying product.  The Complaint here fails on

15   both scores.  First, illegal tying arrangements must produce an anticompetitive effect in the

16   market for the tied product.  But the Complaint does not allege even a tied product market, let

17   alone an anticompetitive effect in that market.  Moreover, the tied products cannot be a market

18   because they comprise an unidentified mass of products whose only characteristics are that

19   Defendants sell them, and they are not Webkinz – the alleged tying product.

20         Second, the Complaint fails to allege any facts that could support the conclusion that

21   Webkinz - a menagerie of toy monkeys, lions, dogs and other creatures, linked to an interactive

22   Web site - possesses market power in a relevant tying product market, the essential ingredient of

23   any *per se* tying claim.  The skeletal and conclusory facts alleged in the Complaint do not warrant

24   a finding of market power, particularly in view of the Ninth Circuit's recent and controlling

25   decision in *Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*, No. 06-55937, 2008 U.S.

26   App. LEXIS 14761 (9th Cir. July 11, 2008).  Indeed, the Complaint admits that the nation's

27   largest toy companies sell competing products, and fails to allege any barriers that could prevent

28   other companies from offering additional competitive products.

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

1    The Complaint's myriad flaws do not simply reflect a failure of pleading; rather, they

2    betray the absence of any plausible facts that could support an antitrust claim, requiring dismissal

3    of the Complaint in its entirety.

4    **III.    ALLEGATIONS OF THE COMPLAINT**

5    Defendants Ganz, Inc., a Delaware Corporation, and its related company Ganz U.S.A.,

6    LLC (collectively referred to as "Ganz"), "creat[e] and sell[] toys" in the United States.  Compl.

7    ¶ 15.  Those toys include Webkinz, a "highly popular" line of plush stuffed animals.  Compl. ¶ 3.

8    Each Webkinz comes with a code that enables the user to unlock a Web site that offers online

9    games and other activities, allowing the user to care for a virtual pet by earning points from

10   playing games.  *Id.*

11   Webkinz allegedly competes in a "relevant product market" defined as "the United States

12   market for toys combined with online gaming."  Compl. ¶ 37.  The Complaint alleges that

13   Webkinz "enjoys a dominant position" in this market.  Compl. ¶ 38.  However, according to the

14   Complaint itself, at least four other products sold by major toy companies compete in this market:

15   Hasbro's Littlest Pet Shop VIPs, Shining Stars, Mattel's U.B. Funkeys, and the Be-Bratz doll.

16   Compl. ¶¶ 30, 32.  The Complaint does not allege any barriers impeding entry into the alleged

17   market, nor could such an allegation be made, given the entry of major competitors.

18   While acknowledging the existence of competing products, the Complaint makes no

19   allegation regarding Ganz's share of the alleged market.  Instead, Plaintiff Nuts for Candy (a sole

20   proprietorship that sells chocolates, candy, toys, gifts, and ice cream) (Compl. ¶ 14) bases its

21   claim that Webkinz has a "dominant position" on allegations regarding Webkinz's showing in

22   children's "coolest toy" surveys, raw sales data for Webkinz only (estimated $100 million sales

23   "by late 2007"), "unique" visits to the Webkinz Web site, frequency of web searches, and average

24   length of web visits.  Compl. ¶¶ 38-41.  Without similar data for competing products, Nuts for

25   Candy has somehow calculated that "Webkinz's share of unique visitors to online gaming sites

26   combined with a toy is approximately 80%."  Compl. ¶ 41.

27   Before allowing a retailer to order Webkinz for the first time, Ganz requires the new

28   retailer to order at least $1,000 of Ganz "core line" products and then submit an application to

Baker & Hostetler  LLP
Attorneys At Law
Los Angeles

order Webkinz.  Compl. ¶ 4.  The "core line" is defined only as "Ganz products unrelated to Webkinz, including lip gloss, magnets, and stuffed and rubber animals."  Compl. ¶ 2.

Nuts for Candy alleges that Ganz's retailer requirements constitute a *per se* unlawful tying arrangement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.  Compl. ¶ 61.  The tying product is Webkinz and the tied product is Ganz's "core line," i.e., "Ganz products unrelated to Webkinz."  Compl. ¶ 2.  While the alleged "relevant product market" – by which Nuts for Candy apparently means the tying product market – is "the United States market for toys combined with online gaming," Compl. ¶ 37, the Complaint makes no allegation regarding the market in which the *tied* products compete.

The Complaint further alleges that Ganz's "tying arrangement has been successful" in that "many Class members would not have ordered the tied Ganz products, or would have ordered smaller amounts than Ganz forced them to order."  Compl. ¶ 56.  The only monetary injury alleged by Nuts for Candy is the "forced" purchase of $1,035 in unwanted "core line" products so that Nuts for Candy could order Webkinz.  Compl. ¶ 14.  Nuts for Candy does not allege monetary injury as a result of any increase in price, restriction in supply, or diminution in quality of these so-called "tied Ganz products."  The Complaint neither identifies other competitors in this undefined tied product market nor alleges facts illustrating the alleged foreclosure of commerce or harm to competition in that market.

## IV.   ARGUMENT

### A.   An Antitrust Complaint Must Provide A Factual Basis For A Claim

The Ninth Circuit has held that "in antitrust matters, '[f]actual allegations must be enough to raise a right to relief above the speculative level[.]'"  *Rick-Mik Enterprises, Inc.*, 2008 U.S. App. LEXIS 14761 at *13 (9th Cir. July 11, 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).  As *Twombly* held, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  127 S.Ct. at 1964-65 (internal punctuation omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (court "not bound to accept as true a legal conclusion couched as a factual allegation").

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

1

As the Ninth Circuit observed in *Rick-Mik Enterprises, Inc.*:

2

> In *Twombly*, at least in antitrust matters, the Supreme Court "retired" the familiar
> language derived from *Conley v. Gibson*, 355 U.S. 41, 45-46 . . . , which provided
> "the accepted rule that a complaint should not be dismissed for failure to state a
> claim unless it appears beyond doubt that the plaintiff can prove no set of facts in
> support of his claim which would entitle him to relief." 127 S.Ct. at 1968 (quoting
> *Conley*). *Twombly* opined that the "no set of facts" language "has earned its
> retirement" and "is best forgotten[.]" *Id.* at 1969. Thus, "[a]t least for the
> purposes of adequate pleading in antitrust cases, the Court specifically abrogated
> the usual 'notice pleading' rule[.]" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042,
> 1047 n.5 (9th Cir. 2008).

3

4

5

6

7

2008 U.S. App. LEXIS 14761 at **13-14. Rejecting *Conley's* "no set of facts" language,

8

*Twombly* said that such language "can be read in isolation as saying that any statement revealing

9

the theory of the claim will suffice unless its factual impossibility may be shown from the face of

10

the pleadings." 127 S.Ct. at 1968. Such a lenient standard is unacceptable: "[I]t is one thing to

11

be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to

12

forget that proceeding to antitrust discovery can be expensive." *Id.* at 1966-67 (citation omitted).

13

Where, as here, "the allegations in a complaint, however true, could not raise a claim of

14

entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum

15

expenditure of time and money by the parties and the court.'" *Id.* at 1966 (citation omitted).

16

The Ninth Circuit also has recognized that "[i]ndispensable to any [Sherman Act]

17

section 1 claim is an allegation that *competition* has been injured rather than merely competitors."

18

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987). In *Rutman*, the

19

court affirmed the dismissal of an antitrust action, holding that "[w]hile appellant clearly pleads

20

injury to itself, its conclusion that competition has been harmed thereby does not follow." *Id.*

21

The court added: "[I]f the facts do not at least outline or adumbrate a violation of the Sherman

22

Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust." *Id.*

23

at 736 (internal quotations and citations omitted).

24

Nuts for Candy's allegations must also be evaluated in light of the Supreme Court's recent

25

change in approach to tying claims: "Over the years . . . this Court's strong disapproval of tying

26

arrangements has substantially diminished." *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S.

27

28 35 (2006). Rather than relying on a presumption that a patent confers market power on the

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  patentee, the Court held that "*in all cases* involving a tying arrangement, the plaintiff must prove

2  that the defendant has market power in the tying product." *Id.* at 46 (emphasis added).  The Court

3  expressed strong reluctance to hold tying arrangements per se unlawful, recognizing that "[m]any

4  tying arrangements . . . are fully consistent with a free, competitive market." *Id.* at 45.

5      These Supreme Court opinions expose two fundamental deficiencies in Nuts for Candy's

6  Complaint.  First, Nuts for Candy fails even to allege a market for the supposedly tied products,

7  let alone allege facts sufficient to show the requisite harm to competition in such a market.

8  Second, Nuts for Candy fails to allege that Ganz has market power in the tying product.  In fact,

9  the Complaint alleges facts that establish *absence* of market power:  that major toy companies,

10 including Mattel and Hasbro, sell products directly competitive with Webkinz, and no barriers

11 impede others from offering similar products in this crowded competitive landscape.

## B.    The Complaint Fails To Allege An Anticompetitive Effect In A Market For A Tied Product

12
13     The potential harm in a tying arrangement lies in use of market power in one market – the

14 market for the tying product – to produce an anticompetitive effect in the market for a second, or

15 tied, product.  Without pleading and proof of an anticompetitive effect in the tied product market,

16 there can be no unlawful tying.  Yet the Complaint does not even allege the *existence* of a tied

17 product market, let alone define that market or allege harm to competition there.  Instead, the

18 Complaint refers to a hodge-podge of unidentified products whose only common feature is that

19 they are sold by Ganz, and are not Webkinz, i.e., "Ganz products unrelated to Webkinz, including

20 lip gloss, magnets, and stuffed and rubber animals."  Compl., ¶ 2.

### 1.    The Vice Of A Tying Arrangement Lies In Its Effect On The Tied Product Market

21
22
23     The basis for condemning tying arrangements as a violation of the Sherman Act lies in

24 their impact on competition in the *tied* product market.  In *Illinois Tool Works*, the Supreme Court

25 summarized more than 90 years of tying cases with this observation:

26     [T]he justification for the challenge rested on either an assumption or a showing
    that the defendant's position of power in the market for the tying product was
27     being used *to restrain competition in the market for the tied product.*

28 547 U.S. at 34 (emphasis added); *see also Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    12 (1984) (tying arrangement violates Sherman Act because "competition on the merits in the

2    market for the tied item is restrained").

3        The Ninth Circuit has reiterated this principle even more recently:

4        A tying arrangement is a device used by a seller with market power in one product
         market to *extend its market power to a distinct product market*. . . . Tying
5        arrangements are forbidden on the theory that, if the seller has market power over
         the tying product, the seller can leverage this market power through tying
6        arrangements *to exclude other sellers of the tied product*.

7    *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008) (emphases added);

8    *see also Rick-Mik Enterprises, Inc.*, 2008 U.S. App. LEXIS 14761, at *16  (in tying

9    arrangements, "[t]he injury is reduced competition in the market for the tied product"); *Siegel v.*

10   *Chicken Delight, Inc.,* 448 F.2d 43, 47 (9th Cir. 1971) ("[t]he hallmark of a tie-in is that it denies

11   competitors free access to the tied product market").

12       The vice of a tying arrangement thus lies not in the requirement, by itself, that a customer

13   purchase unwanted products, but in the reduction of *competition* in the market for those unwanted

14   products.  "[W]hen a purchaser is 'forced' to buy a product he would not have otherwise bought

15   even from another seller in the tied product market, there can be no adverse impact on

16   competition because no portion of the market which would otherwise have been available to other

17   sellers has been foreclosed." *Jefferson Parish*, 466 U.S. at 16.

18           **2.     To Establish An Unlawful Tying Arrangement, Plaintiff Must Plead
                      And Prove An Effect On Competition In The Tied Product Market**
19

20       To establish that a tying arrangement is illegal *per se*, a plaintiff must prove (i) two

21   distinct products or services; (ii) a sale or agreement to sell the tying product conditioned upon

22   the purchase of the tied product; (iii) market power in the relevant market for the tying product;

23   and (iv) that the tied product involves a "not insubstantial" amount of interstate commerce.

24   *Jefferson Parish*, 466 U.S. at 12-18.  This means that to state a claim for tying, a plaintiff must

25   allege "two distinct products and two distinct markets."  *Catch Curve, Inc. v. Venali, Inc.*, 519 F.

26   Supp. 2d 1028, 1039 (C.D. Cal. 2007).

27       In addition to these elements, the Ninth Circuit, as well as other circuits, require the

28   plaintiff to show a "pernicious effect" on competition in the tied product market.  *In re eBay*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    *Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1033-34 (N.D. Cal. 2008) (citing *Siegel*, 448 F.2d at

2    47); *see also United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 89 F.3d 233, 235-36, n. 2

3    (5th Cir. 1996) (requiring anticompetitive effect on tied market); *Power Test Petroleum Distribs.,*

4    *Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 96 (2d Cir. 1985) (same).

5         In *eBay,* the tying claim was dismissed because "Plaintiffs have not alleged sufficiently

6    that a tie actually caused harm to competitors in the [tied product] market." 545 F. Supp. 2d at

7    1034. Absence of harm in the tied product market has resulted in rejection of tying claims in

8    other courts as well. *See, e.g., CTUnify, Inc. v. Nortel Networks, Inc.*, 115 Fed. Appx. 831, 836

9    (6th Cir. 2004) (dismissing tying claim where plaintiff "has not concretely alleged any

10   anticompetitive effect that the defendants' tying agreement has had on the tied market"); *Driskill*

11   *v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321, 323 (5th Cir. 1974) (affirming summary

12   judgment where defendant's "complete monopoly in the tied market" prevented adverse effect on

13   competition); *United Magazine Co. v. Murdoch Magazines Distrib., Inc.*, 146 F. Supp. 2d 385,

14   399 (S.D.N.Y. 2001) (dismissing tying claim where "there are no competing distributors of the

15   tied products" because "there can be no anticompetitive effects in the tied markets").

16        To prevail on an antitrust claim arising out of an unlawful tying arrangement, a plaintiff

17   therefore must plead and prove two distinct product markets for the tying and tied products. A

18   plaintiff also must plead and prove an anticompetitive effect in the market for the tied product.

19   As shown below, Nuts for Candy has not even attempted either allegation.

20              **3.    The Complaint Does Not And Cannot Allege A Tied Product Market**

21        According to the Complaint, "the relevant product market" should be defined as "the

22   United States market for toys combined with online gaming." Compl. ¶ 37. Regardless of the

23   adequacy or inadequacy of this alleged market as a *tying* product market, the Complaint fails to

24   state a claim because it does not allege, even purportedly, a *tied* product market. While the

25   Complaint refers in passing to a second market as "the market in which the tied products

26   compete" (Compl. ¶ 28), Nuts for Candy makes no attempt to define this market.

27        In *Catch Curve*, the plaintiff's tying allegation was dismissed for failure to "allege two

28   distinct products and two distinct markets." 519 F. Supp. 2d at 1039. In dismissing the allegation,

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  the court held that it could not guess at alleged products or markets that were not defined in the

2  complaint. *Id.* Here, the "tied Ganz products" are defined in the Complaint merely as "products

3  from Ganz's 'core line.'" Compl., ¶ 2. Ganz's "core line," in turn, is identified only as

4  something that "consists of Ganz products unrelated to Webkinz, including lip gloss, magnets,

5  and stuffed and rubber animals." *Id.* Otherwise put, the "tied Ganz products" appear to be

6  everything else that Ganz happens to sell at any given moment.

7      It cannot be determined from the Complaint which, if any, Ganz products besides "lip

8  gloss, magnets, and stuffed and rubber animals" are included in the definition of the tied product.

9  Nor can it be determined if all Ganz "lip gloss, magnets, and stuffed and rubber animals" are

10  considered tied products, since Webkinz – the tying product – is itself a "line of plush stuffed

11  animals," thus making the Complaint's attempt to describe the "tied products" circular. Compl.

12  ¶ 3.

13      Even to the extent that the identity of the alleged tied products can be determined,

14  however, the Complaint lacks any attempt to define the market in which those tied products

15  compete. Virtually any conceivable tied market definition Nuts for Candy might allege would

16  undermine its claims. The tied market cannot be Ganz "core line" products, as single-seller

17  product markets are routinely rejected. *See, e.g., Green Country Food Mkt., Inc. v. Bottling

18  Group, LLC*, 371 F.3d 1275, 1283 (10th Cir. 2004) (Pepsi products not relevant market); *Elliott v.

19  United Ctr.*, 126 F.3d 1003, 1004-06 (7th Cir. 1997) (single arena food sales not a relevant

20  market); *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 480 (3d Cir.

21  1992) (en banc) (Chrysler cars not relevant market; "[e]xcept in rare circumstances, courts reject

22  market definitions consisting of one supplier's products where other brands compete").

23      Nor can the tied market be all suppliers' "lip gloss, magnets, and stuffed and rubber

24  animals," because a market that includes all stuffed animals necessarily includes Webkinz,

25  violating the requirement that the tying and tied product markets be distinct. *See Jefferson

26  Parish,* 466 U.S. at 18; *Catch Curve,* 519 F. Supp. 2d at 1039. Surely the tied market is not all

27  "lip gloss, magnets, and stuffed and rubber animals" *except* "toys with online gaming" (the

28  alleged tying product market), for what principled basis justifies placing stuffed animals without

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   an online component in a separate market from Webkinz, but in the same market as lip gloss?

2   As Nuts for Candy itself recognizes, a product market is defined by "the reasonable

3   interchangeability of use or the cross-elasticity of demand between the product itself and

4   substitutes for it."  Compl., ¶ 29 (emphasis removed).  Thus, a product market is typically defined

5   to include the set of goods or services that qualify as economic substitutes because they enjoy

6   reasonable interchangeability of use and cross-elasticity of demand.  *Thurman Indus., Inc. v. Pay*

7   *'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989); *see also Brown Shoe Co. v. United*

8   *States*, 370 U.S. 294, 325 (1962) (product market defined by "reasonable interchangeability of

9   use" or "cross-elasticity of demand between the product itself and substitutes for it").

10   Any attempt to define a tied product market that includes a wide variety of products sold

11   by Ganz, but excludes Webkinz, will inevitably contravene any notion of either reasonable

12   interchangeability of use or cross-elasticity of demand.  Lip gloss and magnets, for example, are

13   not interchangeable in their use, and surely there is no cross-elasticity in the demand for these two

14   products, i.e., an increase in the price of lip gloss will not cause consumers to buy more magnets.

15   They, along with the other named and unnamed items constituting the so-called "tied Ganz

16   products," are lumped into a single market for two reasons:  (i) Ganz sells them and (ii) they are

17   not Webkinz.  Defining a tied product market as encompassing all products sold by the defendant

18   except the tying product, however, bears no relationship to economic substitutability.

19   Because Nuts for Candy has failed to allege the tied products with any specificity, failed

20   to allege any market in which the tied products compete, and cannot allege such a tied product

21   market within the confines of its own claim, the Complaint should be dismissed.

22   **4.     The Complaint Does Not Allege Any Harm To Competition**

23   Nuts for Candy's omission of any definition of the tied product market – the market that is

24   harmed in an unlawful tying arrangement – reflects the true nature of its grievance.  Nuts for

25   Candy is not complaining that portions of the undefined tied product market have been foreclosed

26   to other competitors; indeed, it has failed to identify any other suppliers that compete in this

27   "market."  The Complaint makes clear that the alleged harm lies not in any foreclosure of

28   competition in the unspecified tied product market, but in Nuts for Candy's allegedly "forced"

1   purchase of unwanted items.  However, as a matter of law, "[f]orcing a buyer to purchase a

2   product he otherwise would not have purchased is insufficient to establish the foreclosure of

3   competition."  *Reifert v. S. Cent. Wisc. MLS Corp.*, 450 F.3d 312, 318 (7th Cir. 2006).  While

4   Nuts for Candy's cost of selling Webkinz may have been increased by the alleged requirement

5   that it purchase unwanted items, increased costs do not equate to a violation of the antitrust laws.

6       The Complaint is replete with references to alleged harm that have nothing to do with any

7   foreclosure of competition in a tied product market:

8       •   The Complaint references "monetary injury" and "wrongful profits" as a result of

9   the "forced" purchases, but not as a result of any increase in prices or reduction in supply with

10   respect to the "tied Ganz products."  Compl., ¶ 7.

11      •   The Complaint alleges that Ganz's conduct is "subjectively motivated by a desire

12   to restrict competition in *the relevant market*," and that the alleged tying arrangement "has had

13   the effect of restricting competition in the *relevant product market*."  Compl., ¶ 45 (emphases

14   added).  The "relevant product market," as defined in the Complaint, is the *tying* product market –

15   "the United States market for toys combined with online gaming."  Compl., ¶ 37.

16      •   The Complaint alleges that Ganz "adopted and implemented these policies and

17   practices to preserve and extend its dominant position in the *relevant market*."  Compl., ¶ 47

18   (emphasis added).

19      The Complaint does allege, as an afterthought, that Ganz's conduct has "had the effect of

20   reducing the level of competition in the relevant market and in the market for the tied Ganz

21   products" and that "Ganz's conduct has allowed it to maintain and increase its market share in

22   those markets."  Compl., ¶ 47.  However, without any factual allegations as to how competition in

23   the undefined tied product market has been reduced, or how that reduction in competition has

24   harmed plaintiff, such conclusory allegations of anticompetitive effect are insufficient.  *Les*

25   *Shockley Racing v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("claimant may not

26   merely recite the bare legal conclusion that competition has been restrained"); *Rutman Wine Co.*,

27   829 F.2d at 734-35 (rejecting conclusory allegation that injury to plaintiff necessarily harms

28   competition).

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

1    A tying claim requires Plaintiff to plead and prove that as a result of Ganz's conduct,

2    competition in a second, tied product market – in which Webkinz does not compete – was

3    reduced, and that the reduction in competition in that second market harmed Plaintiff.  Nuts for

4    Candy has alleged no tied product market, no facts supporting its conclusory allegation that

5    competition in a tied product market was reduced, and no harm as a result of such reduced

6    competition.  In short, Nuts for Candy has not alleged an unlawful tying arrangement.

7    **C.**    **The Complaint Fails To Allege That Ganz Possesses Market Power In A Relevant Product Market**

8         The Complaint must be dismissed for a second, independent reason: the Complaint fails to

9    allege that Ganz possesses market power in a relevant product market for the *tying* product.

10   Pleading and proof of market power in the supposed tying product is an essential element of a *per*

11   *se* tying claim.  The Complaint, however, fails to allege any facts from which market power can

12   be determined or inferred.  Moreover, the Complaint fails to allege entry barriers, without which

13   there can be no market power; indeed, the Complaint affirmatively alleges that Webkinz toys

14   compete with products introduced and sold by the world's largest toy companies.

15        **1.**    **The Complaint Fails To Allege That Webkinz Has Market Power**

16        Market power in the tying product is essential to a *per se* unlawful tying arrangement.

17   "[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has

18   market power in the tying product."  *Illinois Tool Works Inc.*, 547 U.S. at 46.  "A tying

19   arrangement is a device used by a seller with market power in one product market to extend its

20   market power to a distinct product market."  *Cascade Health Solutions*, 515 F.3d at 912.  A

21   complaint that fails to allege market power must be dismissed.  "If [the defendant] lacks market

22   power in the [relevant] market, there can be no cognizable tying claim. . . . A failure to allege

23   power in the relevant market is a sufficient ground to dismiss an antitrust [tying arrangement]

24   complaint."  *Rick-Mik Enterprise, Inc.*, 2008 U.S. App. LEXIS 14761, at *18.

25        The Complaint fails to allege *any* facts that, if proven, would support a finding of market

26   power.  The Ninth Circuit's recent decision in *Rick-Mik Enterprises* provides a roadmap to the

27   deficiencies of the Complaint here, and to why the Complaint should be dismissed.  The plaintiff

28

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

1   in *Rick-Mik Enterprises* also alleged a tying arrangement – that the defendant illegally used

2   market power in gasoline franchises to coerce its franchisees to buy other services.  The Ninth

3   Circuit affirmed dismissal of the complaint because the plaintiff failed to allege market power.

> [O]ther than stating that "[Equilon] rank[s] number one in the industry in branded
> gasoline stations," there are no specific allegations at all as to the franchise market.
> The complaint alleges nothing about, for example, what percentage of gasoline
> franchises are Equilon's (Shell/Texaco) as compared to other franchises like
> Chevron, Mobil, Marathon Oil, or Union 76.  There are no factual allegations as to
> the percentage of gasoline retail sales that are made through non-franchise outlets.
> There are no factual allegations regarding the amount of power or control that
> Equilon has over prospective franchisees.  There are no factual allegations
> regarding the relative difficulty of a franchisee to switch franchise brands.

9   *Rick-Mik Enterprises, Inc.*, 2008 U.S. App. LEXIS 14761 at *17-18.

10          Each of the deficiencies in the *Rick-Mik Enterprises* complaint is mirrored in this case,

11  where the Complaint also lacks any "specific allegations at all as to the . . . market."  *Id.* at *17.

12  The Complaint here, other than the conclusory allegation that Webkinz has a "dominant position"

13  in the supposed market for toys combined with online gaming (¶ 38), does not allege a market

14  share for Webkinz, or any of Ganz's admitted competitors.  The Complaint contains no allegation

15  of the total size of the market, or of "the amount of power or control" (*Rick-Mik Enterprises, Inc.*,

16  2008 U.S. App. LEXIS 14761 at *18) that Webkinz has over its retail customers.  *See also*

17  *Sheridan v. Marathon Petroleum Co. LLC*, No. 07-3543, 2008 U.S. App. LEXIS 13275, at *11-

18  12 (7th Cir. June 23, 2008) (affirming dismissal of tying complaint; "[T]he plaintiff's naked

19  assertion of Marathon's 'appreciable economic power'—an empty phrase—cannot save the

20  complaint.").

21          Instead of allegations directly addressing Ganz's supposed market power, Nuts for Candy

22  alleges three irrelevant facts from which it hopes that market power might be inferred.  (The *Rick-*

23  *Mik Enterprises* plaintiff took the same "inferential" approach, which the Ninth Circuit rejected.

24  2008 U.S. App. LEXIS 14761 at *19-20.)

25          •       First, the Complaint alleges that Webkinz "enjoys great popularity," because

26  children aged six to eleven regard it as the "coolest" toy brand (girls) and the third "coolest"

27  (boys).  Compl., ¶ 38.  Children's perceptions of "coolness" are, to say the least, a novel approach

28  to proof of market power.  Be that as it may, as explained below, nothing prevents such

BAKER & HOSTETLER LLP
ATTORNEYS  AT LAW
LOS ANGELES

1  toymakers as Mattel and Hasbro from introducing toys that can dislodge Webkinz from their

2  current perch atop kids' "coolness" charts.  "Great popularity" is not evidence of market power.

3          •      Second, the Complaint alleges that "Webkinz sales have been high."  Compl.,

4  ¶ 39.  This allegation is meaningless with regard to market power, because the Complaint

5  provides no information by which those "high" sales can be compared to sales of other toys

6  combined with online gaming, or toys of any other type.  In *Rick-Mik Enterprises*, the plaintiffs

7  alleged high gasoline sales, and the Ninth Circuit rejected those allegations as evidence of market

8  power.  2008 U.S. App. LEXIS 14761 at *19-20.

9          •      Third and finally, the Complaint alleges that the Webkinz Web site had a large and

10  growing number of unique visitors.  Compl., ¶ 40.  The Complaint also alleges that this

11  information "strongly suggests that Webkinz's share of unique visitors to online gaming sites is

12  approximately 80%."  *Id.*  Nothing in the Complaint, however, supports that calculation and in

13  any event, Web site visits are not sales.

14      In short, the Complaint lacks any allegations that support Plaintiff's assertion that

15  Webkinz possesses market power.  In an antitrust complaint, "factual allegations must be enough

16  to raise a right to relief above the speculative level[,]"  requiring "more than labels and

17  conclusions," or "a formulaic recitation of the elements of a cause of action[.]" *Rick-Mik*

18  *Enterprises, Inc.*, 2008 U.S. App. LEXIS 14761 at *13.  Nothing but "labels and conclusions" as

19  to market power appear in Nuts for Candy's Complaint, and "[t]his failure makes every other

20  element of the [tying] antitrust case irrelevant."  *Id.* at *19 (quoting *Will v. Comprehensive*

21  *Accounting Corp.*, 776 F.2d 665, 671 (7th Cir. 1985)).

22          **2.      The Complaint Alleges No Entry Barriers, And Admits The Entry Of**
                      **Major Competitors**

23

24      Market power is "the power to control prices or exclude competition[.]"  *Paladin Assocs.*

    *v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).  Market power – particularly the

25  ability to exclude competition – cannot exist, however, without entry barriers.  The Complaint

26  fails to allege the existence of entry barriers.  Moreover, it is implausible that any barrier exists to

27  the ability of competitors to offer toys combined with an interactive Web site that compete with

28

BAKER & HOSTETLER LLP
ATTORNEYS  AT LAW
LOS ANGELES

1    Webkinz.  "[E]ven if [the plaintiff] has established properly the contours of the relevant market

2    and has demonstrated that [the defendant] owns a dominant share in that market, we nevertheless

3    conclude that [the plaintiff's] claims under Section 2 must fail because it cannot demonstrate that

4    there are significant barriers to entry or expansion in the market it has defined."  *W. Parcel Expr.*

5    *v. United Parcel Serv. of Am.*, 190 F.3d 974, 975 (9th Cir. 1999).  "Time after time, we have

6    recognized this basic fact of economic life: 'A high market share, though it may ordinarily raise

7    an inference of monopoly power, will not do so in a market with low entry barriers or other

8    evidence of a defendant's inability to control prices or exclude competitors.'"  *United States v.*

9    *Syufy Enters.*, 903 F.2d 659, 664 (9th Cir. 1990) (citation omitted).

10          In fact, the Complaint alleges the *absence* of entry barriers:  it acknowledges that some of

11    the nation's largest toy companies have introduced and sell products that compete with Webkinz

12    by combining a tangible toy with an interactive Web site, including Hasbro's Littlest Pet Shop

13    VIPs (www.hasbro.com/littlestpetshop), Mattel's U.B. Funkeys (www.ubfunkeys.com), Bratz's

14    Be-Bratz dolls (www.be-bratz.com), and Shining Stars (www.shiningstars.com).  Compl., ¶¶ 30,

15    32.  There can be no "plausible entitlement to relief" (*Twombly*, 127 S.Ct. at 1967) when the

16    Complaint contradicts itself by alleging easy and actual entry into the market where Ganz

17    allegedly wields market power.   "When 'the complaint itself gives reasons' to doubt plaintiff's

18    theory . . . it is not our task to resuscitate the claim but to put it to rest.  Nothing prevents a

19    plaintiff from pleading itself out of court, which is all that happened here."  *NicSand, Inc. v. 3M*

20    *Co.*, 507 F.3d 442, 458 (6th Cir. 2007) (en banc) (quoting *Twombly*, 127 S.Ct. at 1972).

21                    **3.      The Complaint's Allegations Of Webkinz's Popularity Are Not A**
                              **Substitute For The Required Allegations Of Market Position And**
22                            **Entry Barriers**

23          Nuts for Candy may contend that it is relying not on Ganz's supposed market power in the

24    conventional sense, but rather on the sheer popularity and attractiveness of Webkinz, despite

25    Ganz's many competitors.  To be sure, the Supreme Court said nearly 50 years ago in *United*

26    *States v. Loew's, Inc.*, 371 U.S. 38, 45 (1962) that "[e]ven absent a showing of market

27    dominance, the crucial economic power may be inferred from the tying product's desirability to

28    consumers or from uniqueness in its attributes."  The Supreme Court, however, disapproved

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    *Loew's* in *Illinois Tool Works* when it held that "market power in the tying product" must be

2    proven "in *all* cases involving a tying arrangement."  547 U.S. at 46 (emphasis added).

3        "Uniqueness" or "desirability to consumers," in any event, is not mere popularity, which

4    is all that the Complaint alleges regarding Webkinz.  Rather, uniqueness refers to the inability of

5    competitors to offer a competitive product, not simply their unwillingness to do so.  "[T]he key

6    question in establishing sufficient market power is whether the seller has some cost advantage not

7    shared by its competitors which makes its competitors *unable* to provide the tying product[;] . . . a

8    mere showing that its competitors did not want to provide the tying product is insufficient to

9    establish an illegal tie."  *Cascade Health Solutions*, 515 F.3d at 916 n.26.

10       The Supreme Court itself has explained that a tying product is "unique" only if

11   competitors cannot offer it themselves.  *Jefferson Parish*, 466 U.S. at 17 (tying can be found

12   "when the seller offers a unique product that competitors are not able to offer").  *See also Will*,

13   776 F.2d at 672 (in a tying case, "the plaintiff must show a barrier to entry that prevents

14   competition. If rivals may design and offer a similar package for a similar cost, there is no barrier,

15   and without a barrier there is no market power.").  Here, however, competitors not only have the

16   ability to offer toy-plus-interactive Web site products that compete with Webkinz, but they have

17   actually done so in large numbers, according to the allegations of the Complaint itself, thus fatally

18   contradicting the Complaint's allegations of market power.

19   **V.    CONCLUSION**

20       The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

21   Dated:  August 4, 2008                    Respectfully submitted,

22                                             BAKER & HOSTETLER LLP
                                               LISA I. CARTEEN
23                                             /s/ Lisa I. Carteen
24                                             Lisa I. Carteen
                                               Attorneys for Defendants
25                                             GANZ, INC. and GANZ U.S.A., LLC

26

27

28

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES



1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  NUTS FOR CANDY, a Sole                    Case No.  CV 08-2873 JSW
    Proprietorship, individually and on behalf
12  of all others similarly situated,         **[PROPOSED] ORDER GRANTING
                                              DEFENDANTS' MOTION TO DISMISS
13                  Plaintiff,                PLAINTIFF'S COMPLAINT**

14  v.                                        Date:       November 7, 2008
                                              Time:       9:00 a.m.
15  GANZ, INC. and GANZ U.S.A., LLC,          Judge:      Hon. Jeffrey S. White
                                              Ctrm.:      Courtroom 2, 17th Floor
16                  Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

[PROPOSED] ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    The Motion of Defendants Ganz, Inc. and Ganz U.S.A., LLC to dismiss Plaintiff Nuts for

3    Candy's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that

4    Plaintiff has failed to state a claim under the antitrust laws, came on for hearing on November 7,

5    2008 at 9:00 a.m. before the Honorable Jeffrey S. White.  Defendants were represented by Lee

6    Simowitz and Bruce Baumgartner.  Plaintiff was represented by Joseph Cotchett and Steven

7    Williams.

8    Plaintiff's Complaint does not state a claim upon which relief can be granted, as Plaintiff

9    has failed to state a claim for Defendants' alleged violations of Section 1 of the Sherman Act (15

10   U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14).  An antitrust complaint must

11   contain "factual allegations . . . enough to raise a right to relief above the speculative level[.]"

12   *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  The Complaint fails to state a

13   claim upon which relief can be granted for the following reasons, among others:

14      1.    Plaintiff has failed to plead an anticompetitive effect in a market for a second, or

15   tied, product.

16         a.    Plaintiff has failed to plead a relevant market in which the tied products

17   compete.  *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008); *Catch*

18   *Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1039 (C.D. Cal. 2007).

19         b.    Plaintiff has failed to plead that as a result of Defendants' conduct,

20   competition in a second, tied product market was reduced and that the reduction in competition in

21   that market harmed Plaintiff.  *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34 (2006);

22   *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 47 (9th Cir. 1971); *In re eBay Seller Antitrust Litig.*,

23   545 F. Supp. 2d 1027, 1033-34 (N.D. Cal. 2008).

24      2.    Plaintiff has failed to allege that Defendants have market power in a relevant

25   product market for the tying product.  *Rick-Mik Enterprises. Inc. v. Equilon Enterprises, LLC*,

26   No. 06-55937, 2008 U.S. App. LEXIS 14761, at *18 (9th Cir. July 11, 2008).  Further, Plaintiff

27   has failed to plead that there are barriers to entry or expansion in the market for the tying product.

28   Without barriers to entry in the market for the tying product, Defendants cannot possess market

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   power. *W. Parcel Expr. v. United Parcel Serv. of Am.*, 190 F.3d 974, 975 (9th Cir. 1999).  In fact,

2   Plaintiff has pled that major toy companies have freely entered the market in competition with

3   Defendants, which contradicts Plaintiff's allegation of market power.

4          Therefore, after consideration of the briefs and arguments of counsel and all other matters

5   presented to the Court, and good cause appearing therefore, IT IS HEREBY ORDERED that:

6          1.      Defendants Ganz, Inc.'s and Ganz U.S.A., LLC's Motion to Dismiss is granted;

7   and

8          2.      This action is dismissed with prejudice.

9

10

11  DATED: _____     _____

12                                       HONORABLE JEFFREY S. WHITE
                                         UNITED STATES DISTRICT COURT JUDGE
13

14

15  501996339.4

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES