IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: WEBKINZ ANTITRUST LITIGATION

No. M 08-01987 JSW

**ORDER GRANTING MOTION TO DISMISS**

_____/

Now before the Court is the motion to dismiss counts one, two, part of five, and seven of the Plaintiffs' consolidated amended class action complaint filed by Defendants Ganz, Inc. and Ganz U.S.A., LLC ("Ganz"). Ganz brings this motion to dismiss: (1) the first count for violation of the antitrust laws; (2) the second count under California's Unfair Competition Law; (3) the fifth count under Illinois' Consumer Fraud Act or a claim for damages under the Deceptive Practices Act; and (4) the seventh count under New York's General Business Law §§ 349 *et seq.*, all for failure to state a claim upon which relief can be granted. Having carefully considered the parties' arguments and relevant legal authority, the Court hereby GRANTS Ganz's motions to dismiss with leave to amend.

**BACKGROUND**

Ganz develops and distributes toys and other products, including Webkinz, a popular toy linked to an interactive web site. Associated with each Webkinz toy is a code that enables the

user to unlock a web site, called Webkinz World, that offers online games and other activities, allowing the user to take care of a virtual pet by earning points by playing games, which can be used to buy food, houses, and other items. The code is valid for one year, after which the user must purchase another Webkinz to continue to have access to the Webkinz World. (Consolidated Amended Class Action Complaint ("Compl.") at ¶ 3.)

This action arises from alleged illegal acts by Ganz in "(a) conditioning the sale of Webkinz (the 'tying product') on the purchase of unrelated Ganz products from the tied product markets (the 'tied Ganz products') and (b) Defendants' practice of taking orders for Webkinz, which they have no intent to, and do not, deliver in a reasonably timely manner." (*Id.* at ¶ 2.) According to the complaint, Ganz initially sold Webkinz through its established network of small retailers and gift shops. When Ganz first introduced the product the marketplace, it had no special requirements for purchase, but shortly afterward, began to require that retailers purchase unrelated products from Ganz's "core product line" before they could purchase Webkinz or Webkinz-related merchandise. (*Id.* at ¶ 5.) In addition to the co-purchasing requirement, Ganz created a Loyalty Program for Webkinz retailers giving priority shipping for ordering more than specific levels of core products (the non-Webkinz, or tied Ganz products) within a twelve-month period. (*Id.* at ¶ 7.)

On the basis of these allegations, Plaintiffs assert causes of action for violation of the Sherman Act § 1 and the Clayton Act § 3, as well as claims for violation of the consumer protection statutes in California, Connecticut, Florida, Illinois, Massachusetts and New York. All claims have been consolidated in this multi-district litigation.

The Court will address additional facts as necessary in the remainder of this order.

## ANALYSIS

**A.      Legal Standard Applicable to Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court,

however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the grounds of [its] entitlement to relief." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1959 (2007) (citations omitted). In addition, the pleading must not merely allege conduct that is conceivable, but it must also be plausible. *Id.* at 1974.

**B.     Plaintiffs' Antitrust Cause of Action.**

Tying arrangements are traditionally defined as "an agreement by a party [the seller] to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461-62 (1992). In order to prevail on a traditional tying claim, a plaintiff must plead and prove: (1) that there exist two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market. *See Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (citing *Eastman Kodak*, 504 U.S. at 461-62 (quoting *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5-6 (1958)).

Defendant moves to dismiss the antitrust cause of action on the basis that Plaintiffs fail to define a relevant market and fail to allege a valid antitrust injury. The Court shall address each argument in turn.

   **1.     Defining the Relevant Tied Product Market.**

In order to prevail on their antitrust claims of illegal tying, Plaintiffs must establish the relevant markets in which to evaluate Webkinz's alleged market power. *See County of*

3

*Tuolumne v. Sonora Community Hospital,* 236 F.3d 1148, 1157-58 (9th Cir. 2001). In other words, in order to state a valid antitrust claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a "relevant market." The "plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008). There is no requirement that these elements of an antitrust claim be pled with specificity. *Id.* at 1045 (citing *Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996)). An antitrust complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers from a fatal legal defect. *Id.* Accordingly, because "the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Id.* (citing *High Technology Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) (holding that the market definition depends on a "factual inquiry into the 'commercial realities' faced by consumers") (quotations omitted)).

However, a complaint may be dismissed pursuant to Rule 12(b)(6) "if the complaint's 'relevant market' definition is facially unsustainable." *Id.* (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997)). The relevant market must be a product market, whose boundaries are defined not by the consumers but by the products or producers themselves. *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962). Second, the market must encompass the product at issue as well as all economic substitutes for the product. *Id.* "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* The relevant market must include "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).

"A product market includes the product at issue and its substitutes," and requires the Court to consider whether two products are reasonably interchangeable. *Independent Ink, Inc.*

4

*v. Trident, Inc.*, 210 F. Supp. 2d 1155, 1168 (C.D. Cal. 2002) (citing, *inter alia*, *Brown Shoe,* 370 U.S. at 325). The focus of this inquiry is the product's "price, use and qualities." *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1131 (N.D. Cal. 2004) (quoting *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 404 (1956)). Using these factors, products may be considered "reasonably interchangeable," where there is cross-elasticity of demand, *i.e.* if customers would switch to alternatives in response to a price increase in the alleged monopolist's product. *Rebel Oil, Co. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1436 (9th Cir. 1995); *see also AD/SAT, A Division of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 227 (2d Cir. 1999) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 571 (1966)) ("Cross elasticity of demand exists if consumers would respond to a slight increase in the product of one product by switching to another product.").

Third, it is legally permissible to premise antitrust allegations on a submarket, whereby the antitrust plaintiff alleges restraint of trade within or monopolization of a small part of the general market of substitutable products. *Newcal Industries*, 513 F.3d at 1045. "In order to establish the existence of a legally cognizable submarket, the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." *Id.* There are several "practical indicia" of an economically distinct submarket: "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Brown Shoe*, 370 U.S. at 325.

In the consolidated amended complaint, Plaintiffs set out four submarkets that they contend Ganz's core line of tied products fall within: (1) the "Plush market" which is "a distinct submarket within the general toy market" comprising "plush toys that do not have an online gaming component"; (2) the "Souvenirs and Novelties market" which consists of "items [in] souvenir and novelty shops that are designed and manufactured to be bought and/or given as gifts for personal reasons or special events"; (3) the "Home Decorative Accessories market" which consists of "products designed and manufactured to be bought to decorate the interior of

5

a home [such as] picture frames, tableware, and ceramics"; and (4) the "Seasonal Decorations market" which consists of "products designed and manufactured to be bought for holidays, such as Christmas and Thanksgiving [such as] ornaments, decorations, and keepsakes." (Compl. at ¶¶ 81, 83, 84, 85.)

In the complaint, Plaintiffs allege that the submarkets are sufficiently distinct from other product markets and that the relevant industry recognizes these markets as submarkets within the more general market of substitutable products. (*See id.* at ¶¶ 81-85.) In *Station Enterprises, Inc. v. Ganz, Inc.*, 2009 WL 2926572, *7 (E.D. Mich. Sept. 10, 2009), decided at summary judgment on other grounds, the district court implicitly accepted the very same product market definitions. "On a motion to dismiss, the court need not engage in extensive analyses of reasonable interchangeability and cross elasticity of demand." *Bansavich v. McLane Co.*, 2008 WL 4821320, *3 (D. Conn. Oct. 31, 2008) (citations omitted); *see also Newcal Industries*, 513 F.3d at 1045 (holding that the validity of the relevant market is typically a factual rather than a legal analysis). At this procedural stage and as currently pled, the Court does not find Plaintiff's submarket definitions to be "facially unsustainable" and does not grant the motion to dismiss on this ground. *See Newcal Industries*, 513 F.3d at 1045; *see also Delano Farms Co. v. California Table Grape Commission*, 623 F. Supp. 2d 1144, 1176-77 (E.D. Cal. 2009) (holding that market definition is a "deeply fact-intensive" inquiry and that it is not appropriate to "delve into a factual inquiry" on effective substitutes on a motion to dismiss).

### 2. Plaintiffs Do Not Allege Anticompetitive Effect in Tied Market.

Although the Court finds that, on the basis of the allegations in the complaint, the tied submarkets are not facially unsustainable, Plaintiffs do not sufficiently allege anticompetitive effect in those alleged tied markets. Plaintiffs must plead a "pernicious effect on competition and lack of ... any redeeming value." *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1033-34 (N.D. Cal. 2008) (citing *Northern Pacific Ry. Co. v. United States*, 365 U.S. 1, 5 (1958)). In order to make out a cognizable claim for anticompetitive tying, "[t]he injury is reduced competition in the market for the tied product." *Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 971 (9th Cir. 2008). As the Supreme Court has stated, "the justification for

the challenge [against ties] rested on either an assumption or a showing that the defendant's position of power in the market for the tying product was being used to restrain competition in the market for the tied product." *Id.* at 971 (citing *Illinois Tool Works Inc. v. Independent Ink, Inc.,* 547 U.S. 28, 34 (2006)). "Thus, 'in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.' And to prove it, it must first be properly alleged." *Rick-Mik,* 532 F.3d at 971-72 (citing *Illinois Tool Works Inc.,* 547 U.S. at 46).

In the consolidated complaint, Plaintiffs allege that as a result of Ganz's practice of requiring retailers to purchase from their core line of products when placing orders for the Webkinz products the plaintiff retailers are unable to purchase those same type of products from other producers – Ganz's competitors – and are therefore unable to provide those choices to consumers. However, the complaint does not allege that consumers are unable to purchase the competing manufacturers' products from other retailers.

This case is readily distinguishable from the central case relied upon by Plaintiffs, *In re Hypodermic Products Antitrust Litig.*, 2007 WL 1959224 (D.N.J. June 29, 2007). In *Hypodermic Products*, plaintiffs alleged that the dominant manufacturer of hypodermic needles and medical products engaged in exclusionary practices that constrained the purchasing ability of the end users of the products – hospitals and other health care providers. *Id*. at *1-3. The complaint also asserted that, as a result of the anticompetitive behavior of the dominant manufacturer, actual or potential competitors were not able to increase their market share sufficiently to achieve economies of scale, resulting in lower costs and therefore higher prices to end users on a marketwide basis. *Id.* at *4. Here, the allegation is that there is a restriction on retailers or dealers, not on end users or consumers. There is no inference that competing manufacturers of the core product lines are excluded or injured by consumers being unable to purchase their products. There is no allegation or necessary inference that competing sellers have been foreclosed from carrying competing products or that consumers are not able to have access to the tied products markets. There is no allegation that Ganz dominates the tied product submarkets and no inference or allegation that prices, output or general market competition has

7

been affected by Ganz's alleged exclusionary practices. The only allegation of injury is that Plaintiffs, particular retailers with limited shelf space, are unable to stock competing products.[1]

### 3. Claim of Antitrust Injury.

Only individuals who possess antitrust standing by virtue of having suffered such injury may sue to redress an antitrust violation. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 529-535 (1983); *see also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 103, 113 (1986) ("a private plaintiff must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'") (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 497 (1977)). In order to survive a motion to dismiss under Rule 12(b)(6), "an antitrust complaint 'need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws.'" *Cost Mgmt. Servs.*, 99 F.3d at 950 (citing *Newman v. Universal Pictures*, 813 F.2d 1519, 1522 (9th Cir. 1987)). "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). In order to state a claim under Section 1 of the Sherman Act, the plaintiff must allege injury to competition generally, not merely to competitors. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987) (affirming dismissal of antitrust action and holding that "[w]hile appellant clearly pleads injury to itself, its conclusion that competition has been harmed thereby does not follow.")

Plaintiffs repeatedly assert that they were harmed because they were unable to stock their stores' shelves with other competing products from the tied submarkets. (*See, e.g.,* Compl. at ¶¶ 5, 12, 15, 30-36, 91, 95, 97.) Plaintiffs' claimed injury is the money they spent on tied

---

[1] Plaintiffs argue in their opposition that the "Complaint's anticompetitive allegations are clear, and affect the tying and the tied markets. The harm in the tying product caused by Defendants' acts is, like the tied product markets, one that affects a substantial volume of commerce, resulting in higher prices and restricted output affecting consumers." (Opp. Br. at 12.) This is stated as a legal conclusion in the motion briefing. However, the effect of increased prices or restricted output is not actually supported by any facts currently alleged in the complaint. For this reason, the Court grants Plaintiffs leave to amend their complaint to set out such facts, if available.

8

products as a condition for purchasing the Webkinz products. However, that expenditure is the result not of foreclosed business opportunities in the tied markets, but from Plaintiffs' efforts to maximize their profits in the tying market, by satisfying consumer demand for the Webkinz products. Plaintiffs do not allege that Ganz's conduct has in any way affected the price of the tied products or even the overall price for the bundled goods. The injury currently alleged by Plaintiffs does not amount to recognizable harm to competition. *See Rutman Wine*, 829 F.2d at 734 ("[w]hile appellant clearly pleads injury to itself, its conclusion that competition has been harmed thereby does not follow.")

Plaintiffs merely state that the conduct by Ganz caused harm to competition generally, but do not allege specific facts supporting such conclusory legal claims. (*See, e.g.,* Compl. at ¶¶ 12, 89, 97.) In affirming the district court's dismissal of a Sherman Act Section 1 claim for failure sufficiently to allege an unreasonable restraint of or injury to competition, the Ninth Circuit held that "[i]n order successfully to allege injury to competition, a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably. Rather, a claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail." *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989) (citing *Rutman Wine,* 829 F.2d at 736).

Plaintiffs summarily assert that consumers have been harmed, but do not allege facts demonstrating that consumers have suffered any injury as a result of limited choices of the tied products in Plaintiffs' stores. On behalf of actual consumers, Plaintiffs merely plead that

> the illegal tying arrangement caused harm to consumer-purchasers of Plaintiffs' customers by reducing consumer choices of products. The tying arrangement forced Plaintiffs and other members of the class to spend limited financial resources on unwanted "core" product rather than more popular products offered by Ganz competitors and fill their limited shelf space with unwanted product.

(Compl. at ¶¶ 97, 117; 14 ("Defendants' actions have caused injury to the ultimate consumer/purchasers of Plaintiffs' products by reducing the choices available to them."); 120 ("Ganz' tying arrangement has limited consumer choice.").) Conclusory allegations of anticompetitive effect are insufficient without supporting facts as to how competition in the tied markets has actually been reduced or harmed. Plaintiffs' factual allegations do not support the

9

**United States District Court**
For the Northern District of California

contention that the availability of competitive products to consumers was significantly reduced in the four large submarkets – the Plush market, the Souvenirs and Novelties market, the Home Decorative Accessories market, and the Seasonal Decorations market – merely because consumers were limited in their selection of some of those products on specific Plaintiffs' store shelves. There is no factual allegation to support the contention that there was a lack of choice in the large four submarkets for *consumers*; there is merely an allegation that *Plaintiffs'* choices of products within those markets with which to stock their limited shelf space, was restricted. *See, e.g., Bansavich*, 2008 WL 4821320 at *4 (dismissing claim where "complaint set forth allegation supportive of an injury to plaintiff's business, but antitrust injury must represent an adverse effect on competition as a whole in the relevant market rather than to plaintiff."). As there is no specific factual allegations regarding the alleged injury suffered by consumers or competition in the tied markets generally, the Court GRANTS Defendants' motion to dismiss with leave to amend.

**C.      Plaintiffs' State Law Causes of Action.**

      **1.      Count Two Under California's Unfair Competition Law.**

Plaintiffs assert a violation of California's Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq.* ("UCL"), by alleging that Ganz's failure to deliver Webkinz products in a "reasonably timely manner" constituted an "unfair" and "fraudulent" business practice. (*See* Compl. at ¶ 125.) Ganz moves to dismiss Plaintiffs' second count on the basis that Plaintiffs are neither consumers nor competitors of Ganz, but rather are retail businesses that contracted to purchase Ganz products and merely claim that the delivery of the merchandise was not timely. Although, for the most part,[2] Plaintiffs do not allege a breach of contract, Ganz contends that the claim relating to late delivery is essentially a breach of each of the Plaintiff members' contracts with Ganz and California law does not encompass such business-to-business contract claims. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal.

---

[2] With the exception of Plaintiff in *Comstock v. Ganz, Inc.*, C 08-5106 JSW, consolidated with this matter, Plaintiff members do not allege a breach of contract. Ganz contends, however, that the unfair competition claims are "fundamentally contractual in nature." (Reply at 16.)

10

1 App. 4th 115, 135 (2007) ("[W]here a UCL action is based on contract not involving either the
2 public in general or individual consumers who are parties to the contract, a corporate plaintiff
3 may not rely on the UCL for the relief it seeks"); *see also Rosenbluth International, Inc. v.*
4 *Superior Court*, 101 Cal. App. 4th 1073, 1077 (2002) (holding that "a UCL action based on a
5 contract is not appropriate where the public in general is not harmed by the defendant's alleged
6 unlawful practices.").

7 In response, Plaintiffs contend that the standing requirement under the UCL is satisfied
8 here because the *Linear Tech* and *Rosenbluth* cases are readily distinguishable based on the
9 large size and sophistication of the litigants in those matters who were powerful and
10 sophisticated plaintiffs unlike the small mom and pop merchants here who were "victimized by
11 a pernicious and illegal scheme." (Opp. Br. at 20; citing *In re Yahoo! Litigation*, 251 F.R.D.
12 459, 475 (C.D. Cal. 2008) (distinguishing *Linear Tech* and *Rosenbluth* on the basis that
13 plaintiffs in those cases were sophisticated businesses and individually capable of seeking relief
14 for their injuries).)

15 The Court finds that the central issue presented under California law is whether the
16 public at large, or consumers generally, are affected by the alleged unlawful business practice of
17 defendants. The relative size of the plaintiff companies and whether or not there is a contract
18 for the plaintiffs to rely upon is secondary to the analysis of whether, as a result of the alleged
19 unfair or fraudulent business practice, consumers are adversely affected. The California UCL
20 grants standing to companies of varying size, to defend the rights of the general consuming
21 public against unfair and fraudulent business practices. Similar to the analysis below on the
22 basis of Illinois and New York state law, the claim under California's UCL as currently pled is
23 invalid as it fails to state a connection to the protection of the general public. The second count
24 pleads harm only to the Plaintiffs and Class members and alleges only that the conduct has a
25 tendency to cause injury to their business interests under the contracts each plaintiff presumably
26 has with Ganz. The allegations of the current complaint fundamentally sound in contract and
27 do not allege facts sufficient to demonstrate a connection to the protection of the public. The
28 Court finds the allegations to be insufficient to establish the requisite public or individual

consumer interest as required under California law. Accordingly, the motion to dismiss count two under California's Unfair Competition Law is GRANTED with leave to amend to set out the requisite factual connection to the general public or to individual consumer's interest.

### 2. Count Five Under Illinois Consumer Fraud Act and Damages Under the Deceptive Practices Act.

Ganz moves to dismiss the part of Plaintiffs' fifth count under the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. Ann 505/1 *et seq.* ("Illinois Consumer Fraud Act"), on the basis that the transactions at issue are beyond the scope of the statute because they are business-to-business transactions and do not implicate consumer protection concerns.

The elements of a claim under the Illinois Consumer Fraud Act are: "(1) a deceptive act or practice; (2) an intent by defendants that the plaintiff rel[y] on the deception; and (3) that the deception occurred in the course of conduct involving a trade and commerce." *In re Albergo*, 656 N.E.2d 97, 105 (Ill. 1995). Further, a "complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). Also, as "its name indicates, the Consumer Fraud Act is primarily concerned with protecting consumers." *Industrial Specialty Chems. v. Cummins Engine Co.*, 902 F. Supp. 805, 811 (N.D. Ill. 1995). Under the Act, a "consumer" is defined as one "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Plaintiffs bringing a claim under the Act need not be consumers, but the Act does not authorize a suit by a non-consumer where there is no injury to consumers. Although those bringing Consumer Fraud Act claims need not be consumers, they must allege "a sufficient consumer protection nexus." *Nakajima All Co. v. SL Ventures, Corp.*, 2001 WL 641415, *4 (N.D. Ill. June 4, 2001).

Again, for the reasons explained above, the Court finds that Plaintiffs' allegations regarding the practices affecting consumer choice are unpersuasive. In addition, the allegations in the complaint regarding the restrictions on consumer choice focus on the alleged tying arrangement and not on the delays in delivery which form the basis of Plaintiffs' claims under

the Consumer Fraud Act. (*See* Compl. at ¶¶ 12-15, 96-97.) Plaintiffs do not make the allegation that Ganz's conduct in late deliveries made the Webkinz product any less available to consumers. In fact, Plaintiffs contend that those products were instead sold at mass merchandisers such as Target or Wal-Mart, instead of by the small shops like those operated by Plaintiffs. (*See id.* at ¶¶ 101, 107.) The only relevant contention that the delays in delivery affect consumers are stated as legal conclusions, without supporting facts. (*See id.* at ¶ 149 ("Defendants' general course of conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers. Defendants' practices were consumer oriented and also directed to the market generally or implicated consumer protection concerns.") The Court finds such conclusory allegations to be insufficient to set out the requisite consumer protection nexus as required under Illinois law. Accordingly, the motion to dismiss the claim under the Illinois Consumer Fraud Act is GRANTED with leave to amend to establish a sufficient factual predicate supporting a consumer protection nexus.

In addition, Plaintiffs are not entitled to damages under Illinois' Deceptive Practices Act and any such claim for money damages is dismissed. *See Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 45-46 (1990). Both parties agree that only injunctive relief is available under this statute.

### 3. Count Seven Under New York General Business Law.

Ganz similarly argues that Plaintiffs' seventh cause of action under New York's Consumer Protection From Deceptive Acts and Practices statutes should be dismissed for failure to state a claim because Plaintiffs fail to allege that the challenged act or practice was consumer oriented. Similar to the law in Illinois, under New York law, the "statute's consumer orientation does not preclude its application to disputes between businesses per se, but it does severely limit it. ... The threshold requirement of consumer-oriented conduct is met by a showing that 'the acts or practices have a broader impact on the consumer at large' in that they are 'directed to consumers' or potentially affect similarly situated consumers.'" *Cruz v. NYNEX Information Resources*, 703 N.Y.S.2d 103, 107 (2000) (citations omitted).

Again, Plaintiffs fail to allege injury, impact or direction to consumers or to the public interest. The complaint merely states a legal conclusion that "Defendants' acts and practices, as alleged herein were: consumer oriented as Plaintiff and Class members could not supply consumer demand, among other things; materially deceptive or misleading to a reasonable person or consumer, and had a broad impact on consumers at large an the public interest." (*See* Compl. at ¶ 165.) Again, the Court finds such conclusory allegations to be insufficient to establish the requisite consumer orientation as required under New York law. Accordingly, the motion to dismiss count seven under New York's Consumer Protection From Deceptive Acts and Practices statutes is GRANTED with leave to amend to establish a sufficient factual predicate.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with leave to amend. Plaintiffs shall file an amended consolidated complaint, if any, by March 12, 2010. Defendants shall have twenty days thereafter to file their responsive pleading.

**IT IS SO ORDERED.**

Dated: February 17, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE