**United States District Court**
For the Northern District of California

**\*\*E-filed 10/20/10\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE WEBKINZ ANTITRUST
LITIGATION

No. C 08-1987 RS

**ORDER RE MOTION TO DISMISS**

_____/

## I. INTRODUCTION

In this Multi-District Litigation, plaintiffs bring a putative class action against Defendants Ganz, Inc. and Ganz U.S.A., LLC (collectively "Ganz"), asserting an antitrust claim and violations of the consumer protection laws of various states. The First Amended Consolidated Complaint was dismissed with leave to amend.[1] Ganz now moves to dismiss the antitrust claim and certain of the state law claims in Second Amended Consolidated Complaint ("SACC"), contending that plaintiffs have failed to cure the deficiencies identified in the prior order.[2] The motion will be denied as to the antitrust claim, and granted as to the state law claims, without leave to amend.

---

[1] Subsequent to that dismissal the action was reassigned to the undersigned.

[2] On the same day its motion to dismiss was filed, Ganz sought leave for both the opening brief and the opposition brief to be up to 35 pages in length. Generally, a request to exceed page limits should be made prior to the filing of an over-long brief. See, e.g., Civil Local Rule 7-4 (b). While rule violations, however minor, are not condoned, here the opening brief exceeded the standard page limit by less than a page, and the opposition brief was less than two pages over the limit.

**United States District Court**

For the Northern District of California

## II. BACKGROUND

Ganz develops and distributes toys and other products, including "Webkinz," which are small plush stuffed animals. Associated with each Webkinz toy is a code that enables the user to access an interactive web site, called Webkinz World, which offers online games and other activities.  The code is valid for one year, after which the user must purchase another Webkinz to continue accessing Webkinz World.

Plaintiffs are relatively small "mom and pop" retailers. They complain that Ganz, (1) has conditioned the sale of Webkinz to them on their purchase of unrelated Ganz products from its so-called "core product line," and (2) took orders for Webkinz, which it did not intend to deliver in a reasonably timely manner.

## III. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory

Accordingly, the motion for leave to exceed page limits will, in this one instance, be granted *post hoc*.

**United States District Court**
For the Northern District of California

1  statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); see also *Warren v.*

2  *Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

3

4                                          IV. DISCUSSION

5      A.  Federal Antitrust Claim

6      Count 1 of the SACC asserts that Ganz has violated section 1 of Sherman Act and section 3

7  of Clayton Act by conditioning the sale of Webkinz products on plaintiffs' purchases of core line

8  products. In recent years, the Ninth Circuit has described the elements of a claim for illegal "tying"

9  in two cases.  "A tying arrangement is a device used by a seller with market power in one product

10  market to extend its market power to a distinct product market." *Rick-Mik Enterprises, Inc. v.*

11  *Equilon Enterprises LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (citing *Cascade Health Solutions v.*

12  *PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008).[3]  "To accomplish this objective, the seller

13  conditions the sale of one product (the tying product) on the buyer's purchase of a second product

14  (the tied product)." *Id.*  "For a tying claim to suffer per se condemnation, a plaintiff must prove: (1)

15  that the defendant tied together the sale of two distinct products or services; (2) that the defendant

16  possesses enough economic power in the tying product market to coerce its customers into

17  purchasing the tied product; and (3) that the tying arrangement affects a 'not insubstantial volume of

18  commerce' in the tied product market." *Id.* at 913.  Economic power in the tying market sufficient to

19  "force" or "coerce" the buyer into purchasing the tied product is particularly critical to the claim,

20  because, "[t]he injury is reduced competition in the market for the tied product." *Rick-Mik,* 532

21  F.3d at 971; *see also Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984)  ("When

22  such 'forcing' is present, competition on the merits in the market for the tied item is restrained and

23  the Sherman Act is violated."), abrogated on other grounds by *Illinois Tool Works Inc. v. Indep. Ink*,

24  547 U.S. 28 (2006).

25

26  _____
27  [3]  At oral argument, plaintiffs urged the Court to look to *Cascade*, rather than *Rick-Mik*, asserting that it is more recent, and therefore controlling.  *Rick-Mik* is actually the later of the two decisions, albeit only by a few months. Both decisions summarize the general legal principles applicable to
28  tying arrangements in essentially the same way.

**United States District Court**
For the Northern District of California

1    Here, the parties vigorously dispute whether or not a plaintiff pursuing a tying claim must

2    also plead and prove a fourth element—that the tying arrangement has a "pernicious effect on

3    competition." *See In re eBay Seller Antitrust Litigation*, 545 F.Supp.2d 1027, 1034 (N.D.Cal.

4    2008). The degree to which such a requirement may exist independently of a plaintiff's obligation

5    to show that a "not insubstantial volume" of commerce in the tied product market has been affected

6    is somewhat uncertain. In *Hirsh v. Martindale-Hubbell, Inc.,* 674 F.2d 1343 (9th Cir. 1982), the

7    court asserted that upon a showing of the three elements enumerated above, "a tying arrangement is

8    presumptively illegal and will be prohibited *without a specific showing of anticompetitive purpose*

9    *or effect.*" *Id.* at 1347 (emphasis added). The *Hirsh* court described the additional showing of an

10    anticompetitive effect as a requirement imposed only by a "minority of courts." *Id.* at n. 16. In

11    *eBay*, the court asserted that the "Ninth Circuit has adopted the pernicious effect requirement," but

12    relied on a pre-*Hirsh* precedent that only recited, without adopting, a slightly different potential

13    fourth element that had been proposed by a party in that case. *eBay*, 545 F.Supp.2d at 1034 (citing

14    *Siegel v. Chicken Delight*, 448 F.2d 43, 47 (9th Cir. 1971). Furthermore, both *Rick-Mik* and

15    *Cascade* list only the three elements with no *express* mention of any fourth requirement.

16    Nevertheless, even the *Hirsh* court recognized "the rules governing tying arrangements are

17    designed to strike solely at practices employed to impede competition on the merits," and it declined

18    to find illegality where the effect of an alleged tying arrangement was "to promote rather than

19    impede competition." 674 F.2d at 1348-149. Similarly, as noted above, the *Rick-Mik* court

20    expressly held that the *injury* caused by an illegal tying arrangement is "reduced competition in the

21    market for the tied product." *Rick-Mik,* 532 F.3d at 971. Accordingly, it is of little consequence

22    whether a "pernicious effect" is characterized as a separate element to be pleaded and proved, or

23    whether the use of that term in some of the precedents merely makes explicit that the requisite effect

24    on a "not insubstantial volume of commerce" cannot be a benign one. In either event, a plaintiff

25    must allege and ultimately prove facts showing a significant negative impact on competition in the

26    tied product market. Turning then to the sufficiency of the allegations here as to each of the

27    elements, no basis to dismiss the antitrust claims appears at this juncture.

28

4

**United States District Court**
For the Northern District of California

### 1. Tying of two distinct products

In this second motion to dismiss, Ganz does not directly dispute that plaintiffs have adequately alleged a tied product—Webkinz toys—and a second distinct group of tied products—the four submarkets of retail goods identified in the complaint.  Nor does Ganz challenge the adequacy of plaintiffs' allegations that their ability to buy the former was conditioned on their purchase of the latter.[4]  Ganz does contend that plaintiffs have improperly defined the tying market in such a way as to exaggerate its economic power therein, but that argument is more appropriately addressed in connection with the requirement that Ganz have such power.  The complaint satisfies the element of a tying claim that there be two distinct products tied together.

### 2. Economic power in the tying market

Plaintiffs allege that the relevant market for Webkinz is "Toys Combined With Online Gaming," which is further defined as "tangible toy[s] whose purchase is required to gain access to a website that includes games." SACC, ¶ 8.  Ganz complains that plaintiffs have "gerrymandered" this definition to exclude "virtual worlds" that do not involve tangible toys and even those which do involve toys, but which do not require purchasing the toys to gain secret codes or passwords to access the sites.   Ganz contends that were plaintiffs to employ a more "plausible" market definition, they would be unable to allege that Ganz possesses any substantial economic power therein.

A complaint may be dismissed pursuant to Rule 12(b)(6) "if the complaint's 'relevant market' definition is facially unsustainable." *Newcal Industries, Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1045 (9th Cir. 2008) (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436-37 (3rd Cir. 1997)).  The relevant market must be a product market, whose boundaries are defined not by the consumers but by the products or producers themselves. *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962).  The market also must encompass the product at issue as well as

---

[4]   In the prior motion to dismiss, Ganz suggested that plaintiffs had not sufficiently alleged a tying requirement because they only stated that the Ganz core product line "included" products in the four submarkets, thereby implying that plaintiffs may have been able to satisfy the requirement to purchase core products by ordering items that did not fall into any of the four submarkets.  Ganz has not pressed this argument in the present motion.

all economic substitutes for the product. *Id*.  "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Id*.  The relevant market must include "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business."  *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc*., 875 F.2d 1369, 1374 (9th Cir. 1989).

As noted in the prior order, "[o]n a motion to dismiss, the court need not engage in extensive analyses of reasonable interchangeability and cross elasticity of demand."  *Bansavich v. McLane Co*., 2008 WL 4821320, *3 (D. Conn. Oct. 31, 2008) (citations omitted); see also *Newcal Industries*, *supra*, 513 F.3d at 1045 (holding that the validity of the relevant market is typically a factual rather than a legal analysis).  Here, plaintiffs' market definition is not so facially implausible as to permit dismissal at this stage.  While plaintiffs undoubtedly have defined the relevant market in a manner that furthers their claims, it does not appear unduly farfetched for them to contend that "virtual worlds" other than those associated with, and accessed through, the purchase of a tangible toy are not reasonable economic substitutes.

Ganz further contends that plaintiffs have not established it wields economic power even in the market as defined.  Ganz faults plaintiffs for relying on estimates of its share of website traffic, rather than on sales figures or other data that might more directly establish its market power.  It may well be that website visits are not an entirely accurate reflection of product sales, given that the number of repeat visits per toy sold might vary among competitors depending on, among other things, customers' interest in the websites.  Nevertheless, it is plausible that there is at least some significant correlation between the two.[5]  Additionally, there is no suggestion here that Ganz offered Webkinz and its core products as a "package" to meet its customers' potential *preference* for the convenience or discounts that might be available from such an arrangement.  *See Jefferson Parish*, *supra*, 466 U.S. at 12 ("Buyers often find package sales attractive; a seller's decision to offer such packages can merely be an attempt to compete effectively.")  Rather, the facts alleged, taken as true for purposes of this motion, plainly establish coercion.  Accordingly, for purposes of pleading, at

_____

[5]  Furthermore, the SACC contains at least some comparative sales estimates.  See ¶¶ 58-61.

United States District Court
For the Northern District of California

least, plaintiffs have shown Ganz holds sufficient economic power in the tying product to support a tying claim.

### 3. Effect

The prior order of dismissal concluded that plaintiffs at that time had not sufficiently alleged facts showing a negative impact on competition in the tied market.  In the present motion to dismiss, Ganz argues that the SACC has done little if anything to remedy the prior deficiencies, because plaintiffs are relying on at least some of the same *types* of purported harm they pointed to in opposing the first motion to dismiss.  In arguing that plaintiffs are thereby effectively seeking reconsideration of issues already decided against them, Ganz is reading too much into the prior order.  That order observed that plaintiffs had not alleged facts showing or giving rise to inferences that there had been any substantial harm either to the ability of Ganz's competitors to sell in the tied product market or to the ability of consumers to purchase tied products.  February 17, 2010 Order at 7:23-8:1.  The order specifically concluded, "Plaintiffs merely state that the conduct by Ganz caused harm to competition generally, but do not allege specific facts supporting such conclusory legal claims." *Id*. at 9:9-10.

Ganz now urges that the effect of the prior order should be to preclude plaintiffs from stating a claim to the extent they are still relying on similar arguments as to the nature of the harm to competition.  The critical difference, however, is that the SACC now contains factual allegations to support what the prior order found to be only conclusory argument in the briefing.   For example, in paragraphs 30-36, plaintiffs identify by name various vendors from whom they previously purchased tied products, but with whom they ceased or reduced doing business as an alleged direct result of Ganz's tying policies.  Likewise, paragraphs 101-104 set out as allegations of fact various harms to consumers resulting from the alleged tying arrangement, including allegations that consumers paid higher prices for tied products in plaintiffs' stores or left the stores without making purchases because of the price differential and lack of selection.

Because such harm had only been argued, not pled, at the time of the prior motion to dismiss, Ganz's insistence that the "law of the case" means that harm is insufficient is not

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   persuasive.  Ganz further argues, however, that plaintiffs have simply not shown any substantial

2   effect on competition in the tied markets *as a whole*—in effect Ganz is contending that because the

3   plaintiff class consists of a limited number of "mom and pop" retailers, the harms they identify are a

4   mere drop in the bucket.  The requirement, however, is only for plaintiffs to show that the tying

5   arrangement affects a "not insubstantial" amount of commerce.  With a class size alleged to be at

6   least in the "hundreds" distributed across the country, plaintiffs have done so.  *See Fortner*

7   *Enterprises, Inc. v. U.S. Steel Corp.*, 394 U.S. 495,501 (1969) ("normally the controlling

8   consideration is simply whether a total amount of business, substantial enough in terms of dollar-

9   volume so as not to be merely *de minimis*").

10          Finally, Ganz continues to argue that plaintiffs are at heart alleging only an effect on their

11   *own* ability to sell what they would like, not harm to Ganz's competitors or to consumers.  On reply

12   Ganz emphasizes *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729 (9th Cir. 1987).  As cited

13   in the prior order, *Rutman* unquestionably stands for the proposition that an antitrust plaintiff must

14   show injury to competition, not just to itself.  *Rutman*, however, was not a tying case.  The plaintiff

15   there complained that it had lost the right to distribute Gallo wines as the result of an agreement

16   between Gallo and another distributor.  The court held that termination of one dealer in favor of

17   another may harm the first dealer, but does not affect competition generally. *Id.* at 735-736.  The

18   court also rejected the plaintiff's argument that competition was impaired because the loss of the

19   right to sell Gallo wines as "door openers" to gain entry into retail outlets thereby impeded its ability

20   to sell competing wines.  *Id.* at 734.  Here, in contrast, plaintiffs are not making the attenuated

21   claim that they may be able to sell a smaller volume of tied products from Ganz's competitors

22   because Ganz has replaced them with other distributors.  Rather, they are specifically alleging as a

23   factual matter that their purchases from Ganz's competitors have substantially decreased as a direct

24   result of the requirement that they buy tied products from Ganz.  Such an injury extends beyond

25   damage to plaintiffs alone.

26

27

28

United States District Court

For the Northern District of California

### 4. Antitrust injury

A threshold requirement in any antitrust action is that the plaintiff must establish "antitrust injury"—that is a loss or damage "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 103, 113 (1986) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 497 (1977)). Thus, "[w]here the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

Here, while Ganz argues that plaintiffs have not adequately alleged such injury, it has failed to explain how the requirement to do so is not subsumed in the elements of a tying claim set forth in *Rick-Mik* and *Cascade*, and discussed above. Neither of those opinions contains any separate discussion of "antitrust injury." While Ganz strenuously contends that plaintiffs must do more than they have to establish the elements of a tying claim in the first instance, it has not suggested any reason why the claim of a plaintiff who has alleged the requisite negative impact on competition— whether or not labeled as "pernicious"—would still be subject to dismissal for failure to show "antitrust injury." Because, as explained above, plaintiffs have adequately alleged the anticompetitive effect of the tying arrangement, they have satisfied their obligation to show "antitrust injury," at least at the pleading stage.

### B. State law claims

The SACC advances claims under the consumer protection statutes of six states. The motion to dismiss does not challenge all of those, presumably because the particular statutes have been worded and/or construed in a manner that makes them potentially applicable to a relatively wide range of factual circumstances. Ganz moves to dismiss, however, the claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Count II), Illinois' Consumer Fraud Act, 815 Ill. Comp. Stat. Ann 505/1 *et seq*. (Count V (in part)), and New York's General Business Law § 349 (Count VII). The parties are in agreement that although there are "subtle differences" in these laws, the central question under all of them is whether the facts alleged

1  demonstrate a sufficient impact of the allegedly wrongful conduct on consumers or the general

2  public.  For the reasons described more fully in the prior order, each of the state statutes in issue

3  requires such a showing.

4      Although the state law counts make passing reference to the alleged tying scheme, the claims

5  are not premised on the purported violations of antitrust law.[6]  Rather, plaintiffs specifically tie the

6  claims solely to their averments that Ganz advertised and offered to sell Webkinz products without

7  the intent or ability to deliver them on a timely basis.[7]  Plaintiffs have identified paragraphs 119-121

8  of the SACC as containing the factual allegations that have been added to support their assertions

9  that consumers were harmed by the alleged conduct.  Paragraphs 120-121, however, relate only to

10  core products, not to the allegations that Webkinz shipments were delayed.  Paragraph 119 alleges

11  merely that consumers expended time and money repeatedly traveling to plaintiffs' stores in

12  fruitless quests to obtain Webkinz.

13      This vague and generalized allegation is insufficient to convert what fundamentally remains

14  a dispute, contractual in essence, between a distributor and retailers, into a consumer matter within

15  the meaning of any of the state statutes at issue.   There is still no allegation of any

16  misrepresentations by Ganz to the public, or of any conduct by Ganz specifically directed or

17  targeted at consumers.  The possibility that at least some members of the public made some

18  unnecessary trips in the hopes of obtaining Webkinz is too thin a reed on which to base these claims.

19  Accordingly, they must be dismissed without leave to amend.

20

21

22

23

24  [6]  At oral argument, plaintiffs suggested that the California statute permits claims based on any underlying "unlawful" act, and that therefore an antitrust violation could give rise to an UCL claim.

25  Even assuming plaintiffs could satisfy the requisite consumer injury under such a theory, their UCL

26  count simply does not plead any claim based on antitrust, and they did not request leave to amend to include such a claim.

27

28  [7]  Apparently the popularity of particular Webkinz toys is relatively short-lived, making timely deliveries of particular importance.

*United States District Court*
For the Northern District of California

1

2

## V. CONCLUSION

3

4       The motion to dismiss Count I is denied.  The motion to dismiss Counts II, VII, and the

5 portion of Count V relating to Illinois' Consumer Fraud Act is granted, without leave to amend.

Ganz shall file an answer within 25 days of the date of this order.

6

7

8

9  Dated: 10/20/10

10                                                  RICHARD SEEBORG
                                                    UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

11